NUMBER 13-06-435-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


FREDERICK LEE MASSEY, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 117th District Court of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Yañez


 

 After the trial court denied the pre-trial motion to suppress filed by appellant,
Frederick Massey, he entered an "open" plea of guilty to felony possession of cocaine. (1) 
The trial court sentenced him to six years' imprisonment. In a single issue, he contends
the trial court erred in denying his motion to suppress. Specifically, appellant complains
his motion to suppress should have been granted because he was illegally detained and
illegally searched. We affirm.

Background


 At the hearing on appellant's motion to suppress, the only witnesses were the two
Corpus Christi police officers, Officers Heleodoro Cantu and Henry Sepulveda, Jr., involved
in appellant's arrest. Officer Cantu testified that around 10:00 a.m. on the morning of the
incident, he received a phone call from someone he believed to be a property manager in
a nearby neighborhood. The caller reported that appellant, accompanied by another man,
was engaged in drug activity at a nearby intersection. Officers Cantu and Sepulveda went
to the location and encountered the two men. Officer Cantu testified that as soon as
appellant saw the officers, he turned his back to them. According to Officer Cantu, when
they asked appellant to turn around and said they wanted to talk to him, appellant "tried to
break and run." Officer Cantu grabbed appellant's shirt as he was trying to run, and Officer
Sepulveda pulled appellant to the ground. Officer Cantu stated that after appellant was
pulled down, he attempted to reach into his pocket. The officers handcuffed appellant,
searched him, and found several rocks of "crack" in appellant's waistband. 

 Officer Sepulveda testified that when they encountered the two men, Officer Cantu
briefly spoke to the man accompanying appellant and told him he could leave. According
to Officer Sepulveda, as soon as the other man left, appellant glanced down the street,
which led the officers to believe that he was going to run or fight. Officer Sepulveda
testified that they asked appellant if he had any weapons, and he said he did not. Officer
Sepulveda was about to pat appellant down, but as he was attempting to do so, "that's
when [appellant] started to go--[.]" Officer Sepulveda testified that the factors he took into
consideration in deciding to conduct a "pat-down" search of appellant were: (1) the phone
tip, which "matched up" with the location and the caller's description of the two men; (2) the
location, which was an area known for drug-dealing; (3) the nature of the call (drug-dealing)
and the knowledge that drug-dealers are usually armed; and (4) appellant's behavior
towards the officers, which led them to believe he was going to run or fight. 

Standard of Review and Applicable Law 


 A trial court's ruling on a motion to suppress is generally reviewed for abuse of
discretion. (2) In a suppression hearing, the trial judge is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given to their testimony. (3) In reviewing a
trial court's ruling on a motion to suppress, we afford almost total deference to the trial
court's determination of the historical facts that the record supports, especially when the
trial court's findings turn on evaluating a witness's credibility and demeanor. (4) When, as in
this case, the trial court makes no explicit findings of historical fact, we presume it made
those findings necessary to support its ruling, provided they are supported in the record. (5) 
We afford almost total deference to the trial court's ruling on "application of law to fact
questions," also known as "mixed questions of law and fact," if resolving those ultimate
questions turns on evaluating credibility and demeanor. (6) We review de novo questions of
law and "mixed questions of law and fact" that do not turn on an evaluation of credibility
and demeanor. (7) We uphold a trial court's ruling on a suppression motion if it is reasonably
supported by the record and is correct on any theory of law applicable to the case. (8)

 Determinations of reasonable suspicion and probable cause should be reviewed de
novo on appeal although great weight should be given to the inferences drawn by the trial
court and law enforcement officers. (9) The burden is on the State to elicit testimony of
sufficient facts to create a reasonable suspicion. (10)

 Officers may stop and briefly detain persons suspected of criminal activity on less
information than is constitutionally required for probable cause to arrest. (11) Under Terry, a
temporary investigative detention (termed a Terry stop) is reasonable, and therefore
constitutional, if: (1) the officer's action was justified at the detention's inception; and (2)
the detention was reasonably related in scope to the circumstances that justified the
interference in the first place. (12) "[A]n officer conducts a lawful temporary detention when
he has reasonable suspicion to believe that an individual is violating the law." (13) 
"Reasonable suspicion exists if the officer has specific, articulable facts that, when
combined with rational inferences from those facts, would lead him to reasonably conclude
that a particular person actually is, has been, or soon will be engaged in criminal activity." (14) 
We give due weight, not to the officer's inchoate and unparticularized suspicion or "hunch,"
but to the specific reasonable inferences that he is entitled to draw from the facts in light
of his experience. (15)

 We review the reasonableness of the detention from the same perspective as the
officer: using an objective standard, we ask whether the facts available at the moment of
detention would warrant a person of reasonable caution in the belief that the action taken
was appropriate. (16) The determination of reasonable suspicion is made by considering the
totality of the circumstances. (17) The "totality of the circumstances" analysis requires us to
respect the common-sense, reasonable judgments of law enforcement officers, as
informed by all surrounding facts and circumstances and the rational inferences and
deductions officers may draw from them based on their experience and familiarity with the
areas they serve. (18) Thus, as the court of criminal appeals has acknowledged, "law
enforcement training or experience may factor into a reasonable-suspicion analysis," (19) and
viewed in the totality of the circumstances, otherwise innocuous or innocent facts may
indicate criminal conduct. (20)

 A tip by an unnamed informant of undisclosed reliability, standing alone, will rarely
establish the requisite level of suspicion necessary to justify an investigative detention. (21) 
"[H]owever, there are situations in which an anonymous tip, suitably corroborated, exhibits
'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory
stop.'" (22) Factors to consider in evaluating the reliability of an anonymous tip include: 
whether the informant provides a detailed description of the wrongdoing; whether the
informant observed the wrongdoing firsthand; whether the informant places himself in a
position to be held accountable for the report; and whether the informant is independent
of the police. (23) The more factors present, the more reliable the tip; the more reliable the
tip, the less corroboration is required. (24) 

 A stop based on facts supplied by a citizen-eyewitness, which are adequately
corroborated by the arresting officer, does not run afoul of the Fourth Amendment. (25) 
Corroboration does not mean that the officer must personally observe the conduct that
causes him to reasonably suspect that a crime is being, has been, or is about to be
committed. (26) Rather, corroboration refers to whether the police officer, in light of the
circumstances, confirms enough facts to reasonably conclude that the information given
to him is reliable and a temporary detention is thus justified. (27) 

Analysis


 Appellant contends he was illegally detained because the police lacked reasonable
suspicion to justify his detention. He also contends that even if his detention was justified,
the State failed to establish reasonable suspicion for the search that produced the
evidence against him. 

 The State argues that (1) because appellant's counsel stated he had "no objection"
to the admission of appellant's judicial confession at the plea hearing, appellant waived his 
challenge to admission of the evidence; and (2) the trial court did not err in denying the
motion to suppress because the police had reasonable suspicion for both the detention 
and the "pat-down" search.

 We begin by addressing the State's waiver argument. Following the trial court's
denial of the motion to suppress, appellant signed a judicial confession admitting guilt,
which was submitted into evidence at the plea hearing. As the State notes, appellant's
counsel stated "no objection" to the admission of appellant's confession. The State argues
that in Young v. State, 8 S.W.3d 656 (Tex. Crim. App. 2000), the court of criminal appeals 
addressed only whether a defendant's guilty plea amounted to a waiver of a prior motion
to suppress, but did not specifically address whether a defendant's judicial confession
amounted to a waiver. (28) We reject the State's argument. In a footnote to the holding in
Young, the court of criminal appeals specifically noted, "[e]ven though a guilty plea was
accompanied by a judicial confession, a judgment is not independent of a ruling that
admitted evidence in error." (29) We conclude that based on Young, the judgment in this case
is not independent of the trial court's ruling on the motion to suppress. We hold, therefore,
that the admission of appellant's judicial confession did not waive appellant's right to
challenge the trial court's suppression ruling. Accordingly, we address the merits of
appellant's claims.

Legality of the Detention


 Appellant argues that it was improper to base his investigative detention on
information obtained from the telephone tip because (1) the caller was not identified and
(2) the information lacked any indicia of reliability. Because the record does not establish
the caller's identity, we treat the information provided as an anonymous tip. (30) An
anonymous tip must be "suitably corroborated" so as to "exhibit[] 'sufficient indicia of
reliability to provide reasonable suspicion to make the investigatory stop.'" (31) Here, the
concerned citizen's report exhibits a high degree of reliability. First, the caller provided a
detailed description of the wrongdoing. Officer Cantu testified as follows:

Q [Prosecutor]: What information besides-- well, if any, did you get in that
phone call?


A [Cantu]: From what I recall there was-- the caller said that there was [sic]
two men. They said one taller and one smaller guy at the corner of Sam
Rankin and-- I forget the cross street-- I think it's Chipito, I think.


Q: I don't know. I'm terrible with that. Okay. So, you received a call that
there was two men, one tall and one short. Was there any other description
of the men?


A: No, I think they tried to give me some other names. I'm not too good with
names. I remember one of the names. The guy he was with. And they said
it wasn't him. They said it was the other guy, so--


Q: Okay. So, you actually had an interactive conversation. You said, was
it so and so, no--


A: Real quick.


Q: -- it's somebody else?


A: Right.


Thus, the caller identified the person with appellant by name and identified appellant as
"the other guy" and "the shorter one," who was allegedly dealing. With regard to the
second factor, the record is silent as to whether the caller observed the wrongdoing
firsthand. Although the record does not establish the caller's identity, Officer Cantu's
identification of the informant as "one of the property managers" suggests that the
informant made no attempt to hide his identity. The record reflects no connection between
the informant and the police. 

 Because the informant's report exhibited a high degree of reliability, the level of
corroboration required to establish reasonable suspicion is lessened in light of the totality
of the circumstances. (32) The officers corroborated the information provided by the informant
by finding appellant and his companion at the specific location described by the informant. 
As the officers approached, appellant turned his back, and when asked to turn around,
glanced around and "took off running." (33) The totality of the circumstances also included
(1) appellant was found in an area that was well-known for drug-trafficking; (34) and (2) Officer
Cantu recognized appellant as a well-known drug dealer. (35) 

 Appellant argues that because the informant's "details" (describing the two men and
identifying their location) were easily observable to anyone in the area, the corroboration
of those details adds nothing to the informer's credibility or allegations of criminal activity. 
In Griffin v. State, 215 S.W.3d 403, 408-09 (Tex. Crim. App. 2006), a case with remarkably
similar facts to the present case, the court of criminal appeals recently rejected an
argument similar to appellant's argument. (36) In Griffin, the defense counsel argued:

[DEFENSE]: That's what we have. And there's some more cases there, too.
What we have here, Judge, is they didn't go to arrest him; they went to do an
investigation. All that they verified was [appellant] is at this corner. Any
person driving by who knew [appellant] could make that determination. That
is not, in and of itself, illegal.

When you look at the totality of the circumstances, even if this is a reliable
informant, they did nothing and confirmed nothing else. There was no future
[sic] movements; there was no actions; there was nothing else that they
confirmed. They just immediately went and started patting him down and
stopped him and detained him, of which they had no right even to-- they had
no right to even detain him.

 

The court of criminal appeals rejected the defendant's argument and found the police had
reasonable suspicion to justify the defendant's detention:

Initially, we decide that the record supports a finding that the police
reasonably suspected, based on specific and articulable facts, that appellant
was selling crack cocaine in a public place so as to justify the initial stop and
detention of him by the police to further investigate his behavior. The police
had information from a reliable informant that appellant was selling crack
cocaine in a specifically-described drug trafficking area of town which is
exactly where the police found appellant minutes after receiving this
information. Police knowledge of appellant's past illegal drug activity
(including his arrest for similar activity a day or two before) and his
nervousness when they approached him are other specific and articulable
circumstances supporting a finding that the police reasonably suspected that
appellant was selling crack cocaine. (37)

 In a response to the State's letter brief citing Griffin, appellant argues that Griffin is
distinguishable because in that case, the police were acting on a tip from a confidential
informant "whom the police considered reliable." (38) We are unpersuaded by appellant's
argument. Although the informant in Griffin is referred to only as "a confidential informant"
and a "reliable" informant," (39) it is unclear whether the "confidential informant" had any
relationship with the police. In the present case, however, the informant had no connection
to the police, and as a result, the informant's tip is considered more reliable than a tip from
a confidential informant with a connection to the police. (40) 

 In light of the heightened indicia of reliability arising from the circumstances of the
citizen-informant's report, the officers' knowledge of appellant's past illegal drug activity,
and his nervousness when they approached, we hold that considering the totality of the
circumstances, the trial court was justified in determining that the officers had reasonable
suspicion to justify appellant's detention. 

Legality of the Search 


 Appellant argues that his "pat-down" search was improper because even in a high
crime area, Terry requires that in order to conduct a weapons frisk, an officer must have
a reasonable, individualized suspicion from which the officer can reasonably infer that an
individual is armed and dangerous. Appellant contends the officers lacked such
reasonable suspicion in this case. Appellant also argues that "the look," which the officers
relied on to justify the "pat-down," was insufficient to justify the search. (41) 

 Officer Cantu testified that the officers did not search appellant until after he was
subdued and handcuffed, which occurred after appellant had attempted to (1) run away
and (2) reach into his pocket as he was wrestled to the ground. However, both officers
testified that as they approached appellant, they intended to conduct a "pat-down" search
for weapons and tried to initiate such a search, but before they could do so, appellant "took
off running."

 The determination of whether a weapons-frisk is justified "is made under an
objective standard[,] which is whether the facts available to [the officer] at the time of the 
frisk 'would warrant a reasonably cautious person to believe that the action taken was
appropriate.'" (42) In determining this issue, the Griffin court held:

And, we decide that Eskelin was objectively justified in frisking appellant for
weapons. We have recognized that it is objectively reasonable for a police
officer to believe that persons involved in the drug business are armed and
dangerous. We decline to hold that this does not apply when a police officer
has not known a specific drug-dealer to carry weapons in the past. It still is
objectively reasonable for a police officer to believe that this person could still
be armed and dangerous at any time he is engaged in the business of selling
drugs especially when this drug-dealer had been arrested for the same
offense just two days before and moves his hand toward his pocket during
an investigative detention based on reasonable suspicion. We decline to
hold that it is objectively unreasonable for a reasonably prudent officer to
protect himself by frisking a possibly violent drug-dealer for weapons even
though the officer conducting the frisk in the case at hand testifies that he
was not subjectively afraid of the suspect. (43)

 We conclude that in the present case, based on the totality of the circumstances
under which the search occurred, it was objectively reasonable for the officers to conduct
the search. We overrule appellant's sole issue and affirm the trial court's judgment. 


 LINDA REYNA YAÑEZ, Justice



Do not publish. Tex. R. App. P. 47.2(b).

Memorandum opinion delivered and filed 

this the 5th day of July, 2007. 

 

1. See Tex. Health & Safety Code Ann. § 481.115(a), (c) (Vernon 2003). 
2. See Ford v. State, 26 S.W.3d 669, 672 (Tex. App.-Corpus Christi 2000, no pet.) (citing Oles v.
State, 933 S.W.2d 103, 106 (Tex. Crim. App. 1999)).
3. Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); State v. Ballard, 987 S.W.2d 889, 891
(Tex. Crim. App. 1999).
4. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997).
5. See Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). 
6. Ross, 32 S.W.3d at 856; Guzman, 955 S.W.2d at 89. 
7. Ross, 32 S.W.3d at 856; Guzman, 955 S.W.2d at 89. 
8. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).
9. Guzman, 955 S.W.2d at 87 (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).
10. Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (concluding that when defendant shows
search or seizure occurred without warrant, burden is on State to show search or seizure was reasonable). 
11. Terry v. Ohio, 392 U.S. 1, 22 (1968). 
12. Id. at 19-20. 
13. Ford, 158 S.W.3d. at 492. 
14. Id.; Brother v. State, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005) (citing Terry, 392 U.S. at 30). 
15. Brother, 166 S.W.3d at 257 (citing Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App. 1997)).
16. See Terry, 392 U.S. at 21-22; Davis, 947 S.W.2d at 243. 
17. Ford, 158 S.W.3d at 492-93.
18. Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997).
19. Ford, 158 S.W.3d at 494.
20. See Woods, 956 S.W.2d at 38. 
21. Florida v. J.L., 529 U.S. 266, 270 (2000). 
22. Id. (quoting White, 496 U.S. at 327). 
23. Pipkin v. State, 114 S.W.3d 649, 655 (Tex. App.--Fort Worth 2003, no pet.). 
24. Id. at 654. 
25. Alabama v. White, 496 U.S. 325, 331 (1990) (anonymous tip that is sufficiently corroborated does
not violate Fourth Amendment); Brother, 166 S.W.3d at 259. 
26. Brother, 166 S.W.3d at 259.
27. Id.
28. In Young, the court of criminal appeals held that: 


Whether entered with or without an agreed recommendation of punishment by the State, a
valid plea of guilty or nolo contendere "waives" or forfeits the right to appeal a claim of error
only when the judgment of guilt was rendered independent of, and is not supported by, the
error.


Young v.State, 8 S.W.3d 656, 667 (Tex. Crim. App. 2000). 
29. Id. n.32. 
30. Mitchell v. State, 187 S.W.3d 113, 117 (Tex. App.-Waco 2006, pet. ref'd) (citing Bilyeu v. State,
136 S.W.3d 691, 694-95 (Tex. App.-Texarkana 2004, no pet.); State v. Fudge, 42 S.W.3d 226, 230 (Tex.
App.-Austin 2001, no pet.); State v. Garcia, 25 S.W.3d 908, 912-13 (Tex. App.-Houston [14th Dist.] 2000,
no pet.)). When asked at the suppression hearing if he knew who the call was from, Officer Cantu stated,
"I want to say it was one of the property managers, but I don't recall. We don't ask questions. We just-- you
know-- get the information. We encourage people to call. We don't really ask them to give us more than
that." 
31. Florida, 529 U.S. at 270 (citing White, 496 U.S. at 327). 
32. Pipkin, 114 S.W.3d at 654.
33. Officer Cantu testified that appellant's behavior could be characterized as "nervousness." Nervous,
evasive behavior is a pertinent factor in determining reasonable suspicion. Illinois v. Wardlow, 528 U.S. 119,
124 (2000). "Headlong flight-- wherever it occurs-- is the consummate act of evasion: it is not necessarily
indicative of wrongdoing, but it is certainly suggestive of such." Id.; see also Vanderhorst v. State, 52 S.W.3d
237, 240 (Tex. App.-Eastland 2001, no pet.) ("Flight from an officer also can provide a reasonable suspicion
that justifies an investigative detention."). 
34. See Guzman, 955 S.W.2d at 90.
35. Officer Cantu testified that appellant has "been arrested several times for drugs. He's got a history
and everybody knows him as a drug dealer."
36. Griffin v. State, 215 S.W.3d 403, 408-09 (Tex. Crim. App. 2006).
37. Id. (citations omitted).
38. Id. at 405. 
39. Id. at 405, 409.
40. See Pipkin, 114 S.W.3d at 655 ("Furthermore, a person who is not connected with the police or who
is not a paid informant is considered inherently trustworthy when he advises the police that he suspects
criminal activity has occurred or is occurring."). 
41. When asked what factors the officers took into consideration in deciding to conduct a "pat-down"
search, Officer Sepulveda mentioned (1) the fact that the area was known for drug-dealing; (2) the nature of
the call (drug deal); (3) the knowledge "that drug dealers do carry weapons;" and (4) that appellant "made
that look" that suggested he was going to run or fight. 
42. Griffin, 215 S.W.3d at 409 (citing O'Hara v. State, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000);
Terry, 392 U.S. at 21-22.)
43. Id. at 409-10 (citations omitted).