**Charles Edward PIPKIN, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–02–454–CR.**

Court of Appeals of Texas,
Fort Worth.

July 24, 2003.

Rehearing Overruled Aug. 21, 2003.

Ronald Vanzura, Denton, for appellant.

Bruce Isaacks, Criminal District Attorney, Kathleen Walsh, Emma O. Guzman, Rick Daniel, Darren Ralsten, Assistant District Attorneys of Denton County, Denton, Matthew Paul, State Prosecuting Attorney, Austin, for appellee.

PANEL F: LIVINGSTON, DAUPHINOT, and GARDNER, JJ.

## OPINION

ANNE GARDNER, Judge.

### I. Introduction

A jury convicted Appellant Charles Edward Pipkin of the offense of possession of a controlled substance. After finding two enhancement allegations to be true, the jury assessed punishment at twenty years' confinement. In one issue, Appellant complains that the trial court erred by not granting his motion to suppress evidence, in violation of his rights under the United States Constitution, Texas Constitution, and article 38.23 of the code of criminal procedure. We will affirm.

### II. Motion to Suppress

During the State's direct-examination of Dale Binkert, an officer with the Denton Police Department, Appellant reurged his previously filed motion to suppress evidence, alleging that the detention that led to his arrest and the search and seizure of items within his vehicle was conducted without reasonable suspicion. After Appellant's voir dire of Officer Binkert and brief argument, the trial court denied Appellant's motion.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000);

*Oles v. State,* 993 S.W.2d 103, 106 (Tex. Crim.App.1999). We will not overturn the trial court's ruling unless its decision was outside the zone of reasonable disagreement. *Salazar v. State,* 38 S.W.3d 141, 153–54 (Tex.Crim.App.2001). We afford almost total deference to a trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based upon an evaluation of credibility and demeanor. *State v. Ross,* 32 S.W.3d 853, 856 (Tex. Crim.App.2000). We afford the same amount of deference to the trial court's rulings on mixed questions of law and fact, if the resolution of those questions turns on an evaluation of credibility and demeanor. *Carmouche,* 10 S.W.3d at 327; *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim. App.1997). We review de novo the trial court's application of law to those facts in the determination of reasonable suspicion and probable cause. *Carmouche,* 10 S.W.3d at 327; *Guzman,* 955 S.W.2d at 89.

### B. Background

During Appellant's trial, the State called Hugh Byrom to testify to a phone call he had made on March 5, 2002 to the Denton Police Department. Byrom testified that on March 5, he was traveling north from Dallas to Denton on Interstate 35–E in Corinth, Denton County, Texas. He was driving in the inside fast lane, and he approached a dark blue sports utility vehicle ("SUV") that was traveling at an "extremely slow" pace. Byrom testified that he wrote down the SUV's license plate number and called the Denton Police Department to report the slow moving SUV. As Byrom spoke with the police department, he passed the SUV on the right hand side to see why it was going so slowly. For approximately thirty seconds, Byrom observed the driver steering the

wheel with his knee and using his hands to light a crack pipe. Byrom told the police that the driver appeared to be smoking crack cocaine and driving around thirty-five to forty miles per hour when the speed limit was seventy miles per hour.

Byrom testified that he gave the police dispatcher the SUV's license plate number, its description, and its location. He also gave the dispatcher his own name, address, cell phone number, location, and destination. Byrom passed the blue SUV and continued north; however, the Denton Police Department asked Byrom "to stand by on [his] cell phone" as he passed the SUV.

The State then offered the testimony of Officer Binkert, who testified that he was patrolling the area of Colorado and Brinker Roads in Denton when he received the call from dispatch advising him about an erratic driver on the freeway. Officer Binkert testified that dispatch relayed to him information provided by a civilian. Dispatch informed Officer Binkert that the civilian observed the driver of a blue SUV with a specific license plate number driving erratically and smoking a crack pipe. Officer Binkert then saw a dark blue Dodge Durango turning left from Loop 288 onto Colorado, and he realized that the license number matched the number the civilian had reported to the police.

Officer Binkert began following the SUV and pulled the car over. While Officer Binkert testified that he did not recall seeing any traffic violations, when asked by Appellant's counsel what suspicion he had to stop Appellant, Officer Binkert responded,

I had the call from a citizen talking about the driving facts that that individual had observed on the highway, driving too slow. The fact that the—he stated—he said the driver was smoking a crack pipe, in his own words.... So

that's the reason I went ahead and stopped him.

Officer Binkert approached Appellant and asked if he had been smoking, and Appellant told him that "he had smoked a joint earlier." Officer Binkert testified that he asked Appellant to get out of his car. Officer Binkert's backup officer, Samuel Moseley, soon arrived and saw Appellant throw a rock of cocaine to the ground. During a subsequent search of Appellant's SUV, the police found another rock of cocaine, rolling papers, a glass tube, and a lighter in the center console of the vehicle.

## C. INVESTIGATIVE DETENTION

The issue in this case is whether the information relayed from Hugh Byrom to Officer Binkert via a police dispatcher was sufficient to justify the investigative detention that led to Appellant's arrest. Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The same standards apply whether the person detained is a pedestrian or is the occupant of an automobile. *See Carmouche*, 10 S.W.3d at 328 (citing *Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612 (1972)) (holding that the "warrantless stop of the Camry was constitutionally justified based upon the informant's tip"); *Rhodes v. State*, 913 S.W.2d 242, 246 (Tex.App.-Fort Worth 1995) (recognizing "[a]n occupant of an automobile is just as subject to an investigative detention as is a pedestrian"), *aff'd*, 945 S.W.2d 115 (Tex.Crim.App.), *cert. denied*, 522 U.S. 894, 118 S.Ct. 236, 139 L.Ed.2d 167 (1997).

To initiate an investigative stop, the investigating officer must possess a

reasonable suspicion based on specific articulable facts that, in light of the officer's experience and general knowledge, would lead the officer to the reasonable conclusion that criminal activity is underway and the detained person is connected to the activity. *King v. State*, 35 S.W.3d 740, 743 (Tex.App.-Houston [1st Dist.] 2000, no pet.). These facts must amount to more than a mere hunch or suspicion. *Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App. 1997).

The reasonableness of a given detention will turn on the totality of the circumstances in that particular case. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim.App.1997); *State v. Sailo*, 910 S.W.2d 184, 188 (Tex.App.-Fort Worth 1995, pet. ref'd). A tip by an unnamed informant of undisclosed reliability standing alone rarely will establish the requisite level of suspicion necessary to justify an investigative detention. *Florida v. J.L.*, 529 U.S. 266, 270, 120 S.Ct. 1375, 1378, 146 L.Ed.2d 254 (2000); *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 2415–16, 110 L.Ed.2d 301 (1990). There are, however, some situations in which an anonymous tip exhibits sufficient indicia of reliability to justify the detention. *J.L.*, 529 U.S. at 270, 120 S.Ct. at 1378.

There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *White*, 496 U.S. at 329, 110 S.Ct. at 2415–16. The informant's veracity, reliability, and basis of knowledge are highly relevant in determining the value of the caller's report. *Id.* at 328, 110 S.Ct. at 2415; *State v. Adkins*, 829 S.W.2d 900, 901 (Tex.App.-Fort Worth 1992, pet. ref'd). "Reasonable suspicion ... is dependent upon both the content of information possessed by police and its degree of reliability." *White*, 496 U.S. at 330, 110

S.Ct. at 2416. Both factors—the quality and quantity—must be taken into account in determining whether a detention is reasonable. *Id.; Sailo*, 910 S.W.2d at 188. "Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *White*, 496 U.S. at 330, 110 S.Ct. at 2416.

Corroboration by the law enforcement officer of any information related by the informant may increase the reliability of the information. *Sailo*, 910 S.W.2d at 188. "[C]orroboration" in this sense does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. *See id.* at 189. Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is justified. *Id.*

Where the reliability of the information is increased, less corroboration is necessary. *State v. Stolte*, 991 S.W.2d 336, 341 (Tex.App.-Fort Worth 1999, no pet.) (upholding detention based on information from an unidentified person relayed to the investigating officer by a police dispatcher); *see also State v. Fudge*, 42 S.W.3d 226, 232 (Tex.App.-Austin 2001, no pet.) (holding reasonable suspicion existed to support detention based solely on cab driver's unsolicited personal report to officer about erratic driving); *State v. Garcia*, 25 S.W.3d 908, 913–14 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (upholding investigative detention after individual "flagged down" officer in parking lot and personally reported incident, even though informant later left scene without identifying himself).

A detailed description of the wrongdoing, along with a statement that the event was observed firsthand, entitles an informant's tip to greater weight. *Illinois v. Gates*, 462 U.S. 213, 234, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983). A tip also deserves great weight if the person put herself in a position to be held accountable for her intervention. *Stolte*, 991 S.W.2d at 341 (citing *United States v. Sierra–Hernandez*, 581 F.2d 760, 763 (9th Cir.), *cert. denied*, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978)). Furthermore, a person who is not connected with the police or who is not a paid informant is considered inherently trustworthy when he advises the police that he suspects criminal activity has occurred or is occurring. *Id.; Sailo*, 910 S.W.2d at 188.

In this case, Appellant argues that Officer Binkert's detention of Appellant was not supported by reasonable suspicion because Byrom's tip lacked sufficient reliability to justify the detention and because Officer Binkert made no independent corroboration of Appellant driving slowly or using drugs. We have already addressed a similar issue in *Stolte*. 991 S.W.2d at 342–43. In *Stolte*, we had to decide whether a police officer was justified in initiating a traffic stop on the sole basis of information received from a cellular phone caller without any personal corroboration on the officer's part. *Id.* at 339. In *Stolte*, a private citizen noticed a pickup truck driving erratically, forcing at least one driver off the road onto the shoulder. *Id.* at 340. As he passed the pickup, the citizen noted the license plate number and called 911. *Id.* The caller gave the police dispatcher a description of the vehicle and the license plate number and was told to keep the dispatcher updated on the pickup's location. *Id.* As the caller and the suspected vehicle exited the highway, the caller noticed that the vehicle was being stopped by a police officer. *Id.* The caller then pulled in behind the police car. *Id.*

We held that all of these circumstances taken together established that the information provided by the cellular phone caller was sufficiently reliable to justify the investigative stop. *Id.* at 343. We explained that the cellular caller proved his reliability by: (1) calling the police and stopping at the scene, thereby putting himself in a position to be held accountable; (2) telling the dispatcher that he was personally watching the vehicle; (3) remaining on the phone to pinpoint the suspect's location; and (4) ensuring that the officer could learn his identity. *Id.* at 342. Moreover, we concluded that the officer was able to confirm that he was detaining the right person due to the caller's description of the vehicle, license number, and location of the vehicle. *Id.*

These same factors are present in this case. As Appellant recognizes in his brief, Byrom was a private concerned citizen, who was not connected with the police. *See Stolte*, 991 S.W.2d at 341; *Sailo*, 910 S.W.2d at 188. Byrom gave the dispatcher a description of Appellant's SUV, license plate, and location and personally watched and reported Appellant's actions as he drove past Appellant's SUV. By giving the police department his own name, cellular phone number, location, and destination, Byrom put himself in a position to be held accountable for his intervention. *See Stolte*, 991 S.W.2d at 341. Furthermore, the information that Byrom gave the dispatcher not only allowed Officer Binkert to confirm that he was approaching the correct vehicle, but also ensured that Byrom's identity could be verified.

The only factual distinction we can make between *Stolte* and the case at hand is that the caller in *Stolte* pulled in behind the police officer after the stop, while Byrom gave information when he was on the

phone so that he could be contacted later, if necessary, which occurred since he testified at Appellant's trial. We do not believe that this distinction destroys *Stolte's* relevance to this case. In *Stolte*, the police officer did not appear to even talk to the private citizen caller until after he had made contact with the suspect. Therefore, we conclude that Byrom's actions in this case were factually similar and result in no substantive difference.

Considering the totality of the circumstances in this case in light of our holding in *Stolte*, we hold that the information from Byrom was sufficiently reliable to justify the investigative stop and was adequately corroborated by Officer Binkert at the time of the detention. The investigative stop thus did not violate Appellant's constitutional or statutory rights. We hold that the trial court did not abuse its discretion in overruling Appellant's motion to suppress, and we overrule Appellant's sole point.

### III. CONCLUSION

Having overruled Appellant's sole point, we affirm the trial court's judgment.