Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# OPINION

No. 04-09-00131-CR

Sara Elsa **ARIZPE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No 4, Bexar County, Texas
Trial Court No. 213309
Honorable Phil Chavarria, Jr., Judge Presiding

Opinion by:  Rebecca Simmons, Justice

Sitting:  Phylis J. Speedlin, Justice
Rebecca Simmons, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  January 6, 2010

AFFIRMED

Appellant Sara Elsa Arizpe was convicted by a jury of Driving While Intoxicated-1st

Offense.  *See* TEX. PENAL CODE § 49.04 (Vernon 2003).  Arizpe's motion to suppress, based on a

lack of reasonable suspicion for the traffic stop, was denied by the trial court.  We affirm the

judgment of the trial court.

## FACTUAL BACKGROUND

On May 3, 2007, Officer James Phelan with the San Antonio Police Department was writing a report on an unrelated accident while sitting in his marked vehicle in a grocery store parking lot at Highway 281 and Loop 1604. A car came "screeching into the parking lot," and a "lady jumped out and started pointing at [Arizpe's] car" saying it was "swerving all over the highway, driving erratically." The unidentified woman stated the car "almost caused a couple of accidents" and that she thought the driver was drunk. The woman then pointed to the car waiting "right at the traffic light." Officer Phelan said he had a "clean view" of the car, about 100 yards away, and that it was "straddling the lane" in the center of lane "number 1 and 2." The traffic light turned green and Officer Phelan went to pursue the suspected drunk driver, later identified as Arizpe. He received no further information from the unidentified woman, and she was never seen again.

Officer Phelan initiated the traffic stop of Arizpe's car immediately "to make sure we weren't driving in traffic." He testified that Arizpe was "failing to maintain a single lane essentially." Upon smelling intoxicants, Officer Phelan asked if she was ok to drive, and Arizpe said she had "two chardonnays." Her speech was "slurred, confused, [and] thick." After a roadside field sobriety test, Officer Phelan placed Arizpe under arrest. Later breath samples showed a .164 and .161 blood alcohol concentration. The jury convicted Arizpe, and she timely filed this appeal.

## STANDARD OF REVIEW

"We review a trial court's ruling on a motion to suppress for an abuse of discretion, affording almost total deference to the trial court's determination of historical facts that the record supports, especially when based on an evaluation of the witness's credibility and

demeanor." *Dossett v. State*, 216 S.W.3d 7, 23 (Tex. App.—San Antonio 2006, pet. ref'd) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We review the application of the law to the facts de novo. *Dossett*, 216 S.W.3d at 23; *Perez v. State*, 103 S.W.3d 466, 468 (Tex. App.—San Antonio 2003, no pet.). In determining whether a trial court's decision is supported by the record, we generally consider "only evidence adduced at the suppression hearing because the ruling was based on it rather than evidence introduced later." *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). This general rule, however, is inapplicable where, as in this case, "the suppression issue has been consensually re-litigated by the parties during trial on the merits." *Id*.

## MOTION TO SUPPRESS

Arizpe's sole issue on appeal is whether the trial court abused its discretion in denying Arizpe's motion to suppress. Arizpe argues the officer received information from an unidentified, unknown individual, and the officer used this anonymous tip as the sole basis to effectuate a traffic stop. The State asserts that the individual was identifiable and the officer had additional information with which to effectuate the traffic stop. Therefore, the State argues the officer had reasonable suspicion to stop Arizpe's vehicle. We review questions of reasonable suspicion de novo, as questions of law. *See Guzman*, 955 S.W.2d at 87-88.

## A. Applicable Law—Reasonable Suspicion

It is well-settled that before a police officer is justified in detaining a motorist, the officer must have reasonable suspicion based upon articulable facts that the motorist was operating or was about to operate her vehicle in violation of the law. *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005). However, although these facts must amount to more than a mere suspicion or hunch, they need not be based upon an officer's personal observations. *Id*. at 258-

59; *Bilyeu v. State*, 136 S.W.3d 691, 696 (Tex. App.—Texarkana 2004, no pet.) ("The observations need not reveal criminal conduct; even innocent acts can give rise to reasonable suspicion under certain circumstances."). A reasonable suspicion determination is made by objectively considering the totality of the circumstances. *Ford v. State*, 158 S.W.3d 488, 492-93 (Tex. Crim. App. 2005). "Totality of the circumstances" considers both quantity and quality of information. *Alabama v. White*, 496 U.S. 325, 330 (1990).

Generally, "[an] anonymous tip usually will justify the initiation of a police investigation." *State v. Simmang*, 945 S.W.2d 219, 223 (Tex. App.—San Antonio 1997, no pet.) (citing *Clemons v. State*, 605 S.W.2d 567, 570 (Tex. Crim. App. [Panel Op.] 1980)). However, a tip by an unnamed informant of undisclosed reliability "rarely will establish the requisite level of reasonable suspicion necessary to justify an investigative detention." *State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref'd) (citing *Florida v. J.L.,* 529 U.S. 266, 269-70 (2000)). There must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *J.L.*, 529 U.S. at 270. A suitably corroborated anonymous tip can, however, exhibit "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." *Id*. at 270 (citing *White*, 496 U.S. at 327).

## B. Reliability of the Anonymous Tip

The following factors are important in evaluating the reliability of information received from an informant: (1) whether the informant provides a detailed description of the wrongdoing; (2) whether the informant observed the wrongdoing firsthand; (3) whether the informant is somehow connected with the police (e.g. a paid informant); and (4) whether the informant places himself in a position to be held accountable for the report. *Pipkin v. State*, 114 S.W.3d 649, 655

(Tex. App.—Fort Worth 2003, no pet.) (citing *Illinois v. Gates*, 462 U.S. 213, 234 (1983); *United States v. Sierra-Hernandez*, 581 F.2d 760, 763 (9th Cir. 1978) (other citations omitted)).

### 1. *Analysis of* Pipkin *Factors*

The record supports the presence of the first three *Pipkin* factors. The informant provided a detailed description of the drunk driving and, specifically, pointed out Arizpe's car to the officer. Second, the informant witnessed the driving firsthand and relayed this information to the officer. Third, the unidentified woman appears to have no connection with the police and was simply a concerned citizen. Arizpe argues the fourth *Pipkin* factor is absent because the informant was not accountable for her report to Officer Phelan. She provided no identifying contact information to the officer. Arizpe argues the officer's lack of information regarding the type, color, or age of the vehicle as well as the informant's age, gender, or driver's license number render the tip anonymous and unreliable. Although not memorialized at the time by the officer, the record reflects the officer spoke directly to the informant and saw the suspected vehicle in question firsthand.

### 2. *Face-to-Face Informants*

Courts traditionally distinguish between anonymous informants that call 9-1-1 versus those that tell an officer the tip in a face-to-face manner. *State v. Fudge*, 42 S.W.3d 226, 230 (Tex. App.—Austin 2001, no pet.). A person, not connected with the police, "who gives a police officer unsolicited information in a face-to-face manner is *inherently* reliable." *Id.* at 232 (citing *Sierra-Hernandez*, 581 F.2d at 763) (emphasis added). Several courts have recognized the heightened reliability of a tip provided by an unidentified informant who places himself in a position to be easily identified and held responsible for the information he provides. *See e.g. Mitchell v. State*, 187 S.W.3d 113, 117-18 (Tex. App.—Waco 2006, pet. ref'd) (stating the face-

to-face manner of the citizen informant tip provided a heightened indicia of reliability); *Bilyeu*, 136 S.W.3d at 696 ("The citizen's providing this information directly to the officers, in person, makes the information significantly more reliable than a simple anonymous telephone call."); *Hawes v. State*, 125 S.W.3d 535, 538-59 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Fudge*, 42 S.W.3d at 232); *State v. Garcia*, 25 S.W.3d 908, 913 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (stating that an individual presenting himself to the officer in person, and doing so while driving a vehicle from which his identity might easily be traced, puts himself in a position to be held accountable for his intervention); *State v. Salio*, 910 S.W.2d 184, 188-89 (Tex. App.—Fort Worth 1995, pet. ref'd) (giving great weight to the unsolicited information provided to the officers in a face-to-face manner).

In the present case, there is nothing in the record that should have caused Officer Phelan to doubt the reliability or good faith of the woman who gave him the information. *See Salio*, 910 S.W.2d at 189. The woman, although unknown to Officer Phelan, was sufficiently reliable because she came forward to give the officer unsolicited information in a face-to-face manner. The *Salio* court held that a person presenting oneself to a police officer, and doing so while driving a car from which an identity might easily be traced, is in a position to be held accountable for the intervention unlike a person who makes an anonymous telephone call. *Id*.

Arizpe argues the officer should have taken down the informant's name, phone number, address, and other identifying information. However, Officer Phelan testified that the informant pointed directly to Arizpe's car as the car driven by the suspected drunk driver and that the light had just turned green. Due to the need to prevent any harm to the drivers around Arizpe, the officer immediately initiated a traffic stop. We conclude, therefore, the information provided by the informant exhibits a heightened indicia of reliability.

## C.    Reasonable Suspicion for Stop

Having determined the informant's tip was reliable, we now turn to the officer's reasonable suspicion for the traffic stop. The level of corroboration required under the totality of the circumstances to establish reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence." *See White*, 496 U.S. at 330. "[C]orroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is justified." *Pipkin*, 114 S.W.3d at 654 (citing *Salio*, 910 S.W.2d at 188. Observation of easily obtained facts and conditions (such as identifying information) will not generally provide the requisite corroboration. *See White*, 496 U.S. at 332; *Bilyeu*, 136 S.W.3d at 696. However, the officer need not personally witness criminal activity, for "even innocent acts can give rise to reasonable suspicion under certain circumstances." *Bilyeu*, 136 S.W.3d at 696; *accord Brother*, 166 S.W.3d at 258-59.

Officer Phelan clearly saw the car identified as that of the alleged drunk driver by the citizen informant, and he noticed the car was positioned in between two lanes at a traffic light. He also testified regarding his nineteen years of police experience as well as his special training recognizing intoxicated drivers. As mentioned, the citizen informant provided details of the alleged drunk driving she witnessed, and she was simply a private concerned citizen, unconnected with the police. Giving deference to the trial court's judgment of the credibility of witnesses and determination of historical facts, we conclude that the totality of the circumstances—including: (1) the reliable tip from a face-to-face citizen informant directly pointing to Arizpe's car; and (2) Officer Phelan's observation of Arizpe's car straddled over a

lane divider at the traffic light—created sufficient reasonable suspicion for Officer Phelan's traffic stop.

## CONCLUSION

Because the citizen informant's face-to-face encounter and immediate identification of the vehicle was inherently reliable, and because the tip was sufficiently corroborated by the officer, the traffic stop was reasonable.  Accordingly, the trial court did not err in denying Arizpe's motion to suppress.  We, therefore, affirm the judgment of the trial court.

Rebecca Simmons, Justice

PUBLISH