# NO. 12-09-00147-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *PHILIP ARTHUR GILES,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Philip Arthur Giles appeals his conviction for driving while intoxicated (DWI). In his sole issue, he contends that the trial court abused its discretion in denying his motion to suppress evidence. We affirm.

### BACKGROUND

On April 26, 2008, Officer Lonnie McKinney of the Brownsboro Police Department conducted a traffic stop. During the traffic stop, a second motorist stopped behind Officer McKinney. In a face to face encounter, the motorist advised Officer McKinney that Appellant's "vehicle was all over the roadway[,] [i]n the ditch[,] [i]n the center median," and that the motorist "believed that [Appellant] was drunk." The vehicle then passed the motorist and Officer McKinney. As the vehicle passed, the motorist physically pointed to the vehicle, exclaiming "that L.T.D." Without obtaining any identifying information from the motorist, Officer McKinney proceeded to follow Appellant's vehicle and conducted a traffic stop even though he observed no traffic violations.

Upon initiating the stop, Officer McKinney detected the odor of alcohol and observed Appellant's "red, watery" eyes. Appellant then performed several field sobriety tests, and the

officer determined that Appellant was intoxicated based on his performance of those tests. After placing Appellant under arrest, Officer McKinney conducted a vehicle inventory search and discovered thirteen empty beer cans, an empty 200 milliliter bottle of grain alcohol, and twenty-six unopened cans of beer. Appellant refused to provide a breath specimen.

Appellant was charged by information with DWI, and later filed a motion to suppress the evidence obtained by the officer during the traffic stop. After a hearing, the trial court denied the motion. Thereafter, Appellant pleaded guilty pursuant to a plea agreement. The trial court accepted the plea agreement and assessed punishment at confinement for 180 days, probated for twelve months, and a $500.00 fine. Appellant timely appealed.

## MOTION TO SUPPRESS

In his sole issue, Appellant asserts that the anonymous tip, in light of the officer's failure to independently observe Appellant commit any traffic violations provided an insufficient basis for the traffic stop. Therefore, Appellant's argument continues, the trial court erred in denying his motion to suppress the evidence seized during the stop.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application of law to fact questions that turn on an evaluation of credibility and demeanor. *See Amador*, 221 S.W.3d at 673. But when application of law to fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *See id.*

When, as here, there are no explicit findings of fact, we imply the necessary fact findings to support the trial court's ruling if the evidence, viewed in the light most favorable to the trial

2

court's ruling, supports those findings. *See **Kelly***, 204 S.W.3d at 819. We then review de novo the trial court's legal ruling unless the implied fact findings supported by the record are also dispositive of the legal ruling. *See **id.***

## Investigative Detentions

Law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than is constitutionally required for probable cause to arrest. ***Terry v. Ohio***, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889.[1] In determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or hunch, but to the specific reasonable inferences that he is entitled to draw from the facts in light of his experience. ***Id.***, 392 U.S. at 27, 88 S. Ct. at 1883. Such an investigative detention is permissible when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts, create a reasonable suspicion that the person detained is, has been, or soon will be engaged in criminal activity. *See **Brother v. State***, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).

The existence of reasonable suspicion to support an investigative detention turns on the totality of the circumstances in each case. *See **Alabama v. White***, 496 U.S. 325, 328-29, 110 S. Ct. 2412, 2415, 110 L. Ed. 2d 301 (1990). Under this analysis, reasonable suspicion is dependent upon both the content of the information possessed by the officer and its degree of reliability. ***Id.***, 496 U.S. at 330, 110 S. Ct. at 2416. Both the quantity and the quality of the information are considered in this analysis. ***Id.***

## Anonymous Tips

A tip by an unnamed informant of undisclosed reliability, standing alone, will rarely establish the requisite level of suspicion necessary to justify an investigative detention. ***Id.***, 496 U.S. at 329, 110 S. Ct. at 2415. In most instances, there must be some further indicia of reliability from which a police officer may reasonably conclude that the tip is reliable and a detention is justified. *See **id.***, 496 U.S. at 329, 110 S. Ct. 2415-16. Where the information has a fairly low degree of reliability, more information will be required to establish the requisite level of suspicion necessary to justify an investigative detention. ***Id.***, 496 U.S. at 330, 110 S. Ct. 2416.

---

[1] Article I, section 9 of the Texas Constitution is coextensive with the Fourth Amendment of the United States Constitution regarding the standard applied to investigative detentions. ***Glover v. State***, 870 S.W.2d 198, 199 n. 1 (Tex. App.–Fort Worth 1994, pet. ref'd) (citing ***Davis v. State***, 829 S.W.2d 218 (Tex. Crim. App. 1992)).

Corroboration by the law enforcement officer necessarily goes to the quality, or reliability, of the information. *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App.–Fort Worth 1995, pet. ref'd). Where the reliability of the information is increased, less corroboration is necessary. *White*, 496 U.S. at 330, 110 S. Ct. at 2416. A detailed description of wrongdoing, along with a statement that the event was observed firsthand, entitles an informant's tip to greater weight than might otherwise be the case. *Illinois v. Gates*, 462 U.S. 213, 234, 103 S. Ct. 2317, 2330, 76 L. Ed. 2d 527 (1983).

Corroboration does not mean that the officer must personally observe the conduct that causes him to reasonably suspect that a crime is being, has been, or is about to be committed. *Brother*, 166 S.W.3d at 259 n. 5 (citing *Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924, 32 L. Ed. 2d 612 (1972)). Rather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and that an investigative detention is thus justified. *Id.* (citing *White*, 496 U.S. at 330-31).

**Face to Face Tips**

"To require officers who are apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until additional suspicious acts are committed[ ] would be foolish and contrary to the balance of interests struck in *Terry* and its progeny." *Id.* at 259 (citing *Terry*, 392 U.S. at 29). Consequently, Texas courts have recognized the higher degree of reliability of face to face tips, with some courts even stating that face to face tips are inherently reliable. *State v. Fudge*, 42 S.W.3d 226, 232 (Tex. App.–Austin 2001, no pet.) (stating that a person, not connected with the police, "who gives a police officer unsolicited information in a face to face manner is inherently reliable"); *see also Arizpe v. State*, No. 04-09-00131-CR, 2010 WL 26285, at *3 (Tex. App.–San Antonio Jan. 6, 2010, no pet. h.) (slip op.); *State v. Sailo*, 910 S.W.2d 184, 188-89 (Tex. App.–Fort Worth 1995, pet. ref'd) (giving great weight to unsolicited information provided to officers face to face). And this court has held that "[i]nformation from a citizen who confronts an officer in person to advise the officer that a designated individual in the near vicinity is committing a specific crime should be given serious attention and great weight by the officer." *See Thompson v. State*, No. 12-06-00097-CR, 2007 WL 1139966, at *4 (Tex. App.–Tyler Apr. 18, 2007, no pet.) (mem. op., not designated for publication); *see also United States*

4

*v. Sierra-Hernandez*, 581 F.2d 760, 763 n.1 (9th Cir. 1978).

**Discussion**

Appellant argues that, without any traffic violation or other reasonable suspicion, the tip from the passing motorist is an anonymous tip without sufficient reliability to support his detention.

The tip in the instant case resulted from a face to face encounter between a police officer and a passing motorist. The passing motorist presented himself to Officer McKinney while driving a car from which his identity might easily be traced, thus putting himself in a position to be held accountable for his statements to the officer. *See Sailo*, 910 S.W.2d at 188. Therefore, he is not properly classified as an anonymous tipster. *See id.* Moreover, the motorist was not in the employ of the police, and had witnessed Appellant's conduct, told the officer that Appellant appeared to be driving drunk, and physically pointed to and identified the vehicle when it passed them. Thus, the tip in this circumstance is inherently more reliable than an anonymous tip. *See Arizpe*, 2010 WL 26285, at *3.

Appellant disagrees, however, and primarily relies on two cases in making his argument. In the first case, an anonymous caller reported that a black male at a particular bus stop wearing a plaid shirt was carrying a gun. *Florida v. J.L.*, 529 U.S. 266, 268, 120 S. Ct. 1375, 1377, 146 L. Ed. 2d 254 (2000). About six minutes later, police arrived and saw three black males at the bus stop, one of which wore a plaid shirt. *Id.* There was no audio recording of the anonymous phone tip, and apart from the tip, the officers had no reason to suspect any of the three of illegal conduct. *Id.* Nevertheless, after frisking all three, the officers discovered that the individual in the plaid shirt possessed a firearm. *Id.* The Supreme Court held that the anonymous tip was not sufficiently reliable, and thus concluded that the trial court properly suppressed the fruits of the search. *Id.*, 529 U.S. at 274, 120 S. Ct. at 1380.[2]

In the second case, a dispatcher received an anonymous call that a drunk driver named Joseph Harris was driving in a green Altima headed south in the 3400 block of Meadowbridge Road. *Harris v. Commonwealth*, 276 Va. 689, 693, 668 S.E.2d 141, 144 (2008), *cert. denied*,

---

[2] Justice Kennedy concurred, noting that "there are many indicia of reliability respecting anonymous tips that we have yet to explore in our cases." *Id.*, 529 U.S. at 274, 120 S. Ct. at 1380-81 (Kennedy, J., concurring). He stated further that a tip might be considered anonymous but sufficiently reliable if it arises out of a face to face encounter between an unnamed motorist and a police officer where the motorist describes criminal conduct of the occupants of a third vehicle. *See id.*, 529 U.S. at 276, 120 S. Ct. at 1381.

*Virginia v. Harris*, 130 S. Ct. 10, 175 L. Ed. 2d 322 (2009). The caller provided a partial license plate number of "Y8066" and stated that the driver wore a striped shirt. *Id.* An officer responded to the call and observed a green Altima on Meadowbridge Road with the license plate "YAR-8046." *Id.* No information was obtained concerning the identity of the anonymous caller. *Id.* The officer stopped the vehicle based solely on the tip without witnessing any traffic violation. *Id.* The Virginia Supreme Court concluded that under these facts, the anonymous tip lacked the indicia of reliability required to support the detention.[3] *Id.*, 276 Va. at 697-98, 668 S.E.2d at 146-47.

In both *J.L.* and *Harris*, the tips were received from an anonymous caller. Furthermore, the tips included no indicia of reliability, and apart from the tip, the officers initiating the stop had no reason to suspect criminal activity. In the instant case, the tip resulted from a face to face encounter. Although the officer did not know the motorist, he could have traced the motorist's identity from the vehicle in which he was driving. Moreover, the information from the motorist was specific in that, while in the officer's presence, the motorist described the vehicle, identified the vehicle as it passed them, and described with particularity the conduct that led the motorist to believe that Appellant was intoxicated. Therefore, the cases cited by Appellant are distinguishable from the case at hand.

Appellant argues further that the officer should have taken down the motorist's name, phone number, address, and other identifying information. However, Officer McKinney testified that the informant pointed directly to Appellant's vehicle as the one driven by the suspected drunk driver. Due to the need to prevent any harm to the drivers around Appellant, the officer quickly initiated a traffic stop. *See Arizpe*, 2010 WL 26285, at *4 (analyzing almost identical facts and concluding tip was sufficient to support reasonable suspicion for investigative detention). Under these circumstances, the officer was not required to record the name or other identifying information of the motorist. *See id.*

---

[3] In his dissent from the denial of certiorari, Chief Justice Roberts, joined by Justice Scalia, stated that (1) the United States Supreme Court has not answered whether anonymous tips reporting drunk driving are sufficient in and of themselves to support a *Terry* stop in the DWI context, (2) it is unclear whether *J.L.* applies in the DWI context, and (3) courts encountering this issue are divided. *Harris*, 130 S. Ct. at 10-11, 175 L.Ed.2d at 322. However, the dissent recognized that most courts have decided that a face to face tip can be sufficient in and of itself to support an investigatory detention in a DWI case, and that the Commonwealth of Virginia's stance is a minority view. *Id.* at 11-12.

In light of the totality of the circumstances, we conclude that Officer McKinney possessed the particularized reasonable suspicion necessary to conduct the traffic stop of Appellant. *See Sierra-Hernandez*, 581 F.2d at 763; *Arizpe*, 2010 WL 26285 at *3-4. Therefore, the trial court did not abuse its discretion in denying Appellant's motion to suppress. We overrule Appellant's sole issue.

## DISPOSITION

We *affirm* the judgment of the trial court.


**SAM GRIFFITH**
Justice


Opinion delivered March 24, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)

7