*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*




# OPINION

No. 04-11-00281-CR

Susan Marie **NACU**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2007CR3364
Honorable Melisa Skinner, Judge Presiding

Opinion by:　Rebecca Simmons, Justice
Concurring Opinion by:　Steven C. Hilbig, Justice

Sitting:　　　Rebecca Simmons, Justice
　　　　　　Steven C. Hilbig, Justice
　　　　　　Marialyn Barnard, Justice

Delivered and Filed:　May 16, 2012

AFFIRMED

Appellant Susan Marie Nacu was charged with felony driving while intoxicated, third

offense.　After the trial court denied her motion to suppress evidence, Nacu entered a plea of

*nolo contendere*.　She now challenges the trial court's ruling on her motion to suppress evidence.

We affirm the trial court's judgment.

**BACKGROUND**

On the evening of March 7, 2007, Peggi Ann Williams, the manager of a Crabby Jacks' restaurant, observed an intoxicated customer, Nacu, disturbing other customers, using profanity, throwing napkins and sugar packets, and asking other customers to buy her alcohol after Crabby Jacks' employees had refused Nacu further alcohol service. Williams recognized that Nacu was intoxicated and asked Nacu on several occasions if she would accept a cab ride home. Nacu refused each offer. When a customer informed Williams that Nacu was in her car in the parking lot attempting to drive away, Williams grabbed a cordless office phone and ran outside.

Before she could dial the non-emergency police line to report Nacu, Williams noticed a police car parked in a lot adjacent to the Crabby Jacks parking lot. Instead of phoning the police, she tapped on Officer Steven Hoffman's window. Hoffman was patrolling for car burglars, and his presence in the parking lot was purely coincidental. Williams testified that she told Officer Hoffman that a "woman had been in my restaurant, I noticed her to be intoxicated and she had gotten in a car." Officer Hoffman asked, "Which woman?" Williams pointed to Nacu's car, and explained, "that vehicle trying to drive between the two metal poles." Williams testified that the two poles were not wide enough to allow Nacu's vehicle to pass and that Nacu almost hit the poles. Hoffman immediately spotted and drove toward Nacu's vehicle without obtaining any further information from Williams. Hoffman followed Nacu for a short distance without activating the patrol car's overhead lights. Nacu drove about twenty feet on a highway frontage road and pulled her vehicle into a different parking lot. Hoffman parked behind her and then activated his overhead lights. Once Hoffman physically approached Nacu, he immediately noticed signs of her intoxication.

Williams and Officer Hoffman testified at the suppression hearing. Hoffman testified that he did not personally observe Nacu commit any traffic violation. He stated his sole basis for the traffic stop was Williams' unsolicited statement, "[Nacu] was too intoxicated to drive." The trial court found both Williams and Hoffman to be credible. The trial court denied Nacu's motion to suppress evidence, and she pleaded *nolo contendere* to driving while intoxicated. Nacu appeals the trial court's ruling.

## MOTION TO SUPPRESS

Nacu contends the trial court erred in denying her motion to suppress and raises two issues on appeal: (1) Officer Hoffman lacked reasonable suspicion to stop Nacu because he failed to corroborate Williams' information, and (2) Williams' conclusory statement to Hoffman that Nacu was "too intoxicated to drive" does not give rise to reasonable suspicion.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We give almost total deference to the trial court's factual determinations, but we review de novo the application of law to the facts. *Valtierra*, 310 S.W.3d at 447–48.

### B. Reasonable Suspicion

A valid temporary detention must be reasonable and justified at its inception. *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968); *Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). An officer is justified in initiating a traffic stop "if the officer, based upon specific and articulable facts, reasonably surmises that the detained person may be associated with a crime." *Davis v. State*, 829 S.W.2d 218, 219 (Tex. Crim. App. 1992) (citing *Terry*, 392 U.S. at 21). The totality

of the circumstances is considered when making a reasonable-suspicion determination, and the standard is an objective one. *Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011). An officer need not personally observe the traffic violation; under certain circumstances, a stop may be justified if the facts underlying the traffic stop are observed by a civilian-informant. *Brother v. State*, 166 S.W.3d 255, 257–58 (Tex. Crim. App. 2005) (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)). A citizen's tip may justify the initiation of a stop if the tip contains "sufficient indicia of reliability." *Arizpe v. State*, 308 S.W.3d 89, 92 (Tex. App.—San Antonio 2010, no pet.) (quoting *Florida v. J.L.*, 529 U.S. 266, 270 (2000) (internal quotation marks omitted)).

### 1. Reliability

The main issue in this case is the reliability of Williams' information. At the time of the incident, Williams did not identify herself by name to Officer Hoffman. Consequently, we treat her as an anonymous citizen informant. We evaluate four factors in determining the reliability of an anonymous citizen's information: "(1) whether the informant provide[d] a detailed description of the wrongdoing; (2) whether the informant observed the wrongdoing firsthand; (3) whether the informant is somehow connected with the police (e.g., a paid informant); and (4) whether the informant place[d] himself in a position to be held accountable for the report." *Arizpe*, 308 S.W.3d at 92 (citing *Pipkin v. State*, 114 S.W.3d 649, 655 (Tex. App.—Fort Worth 2003, no pet.)); *accord Brother v. State*, 166 S.W.3d 255, 258 (Tex. Crim. App. 2005). When determining an informant's reliability, courts distinguish between anonymous 911-callers and unidentified informants who give unsolicited information to officers in a face-to-face manner. *Arizpe*, 308 S.W.3d at 92–93; *accord State v. Fudge*, 42 S.W.3d 226, 230 (Tex. App.—Austin 2001, no pet.). The face-to-face informant is inherently more reliable than the anonymous 911-caller because

the face-to-face informant places himself in a position to be held responsible for his intervention. *Arizpe*, 308 S.W.3d at 93; *see also Mitchell v. State*, 187 S.W.3d 113, 117–18 (Tex. App.—Waco 2006, pet. ref'd); *Hawes v. State*, 125 S.W.3d 535, 538–39 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Fudge*, 42 S.W.3d at 232.

Here, Williams identified herself to Officer Hoffman as a manager at a restaurant where a customer had become intoxicated, and she explained that the customer was too intoxicated to drive. She then identified the intoxicated person by pointing to Nacu's vehicle. This information is sufficient for establishing the first and second factors for determining reliability. *See Arizpe*, 308 S.W.3d at 92; *see also Brother*, 166 S.W.3d at 258. There is no evidence that Nacu was a paid informant; therefore, the third factor is satisfied. *See Arizpe*, 308 S.W.3d at 92; *see also Brother*, 166 S.W.3d at 258. Finally, the facts show Williams placed herself in a position to be held accountable for her report. *See Arizpe*, 308 S.W.3d at 92; *see also Brother*, 166 S.W.3d at 258. Williams explained to Hoffman that she was a manager at a restaurant. Officer Hoffman's testimony was inconsistent regarding whether Williams stated the name of the restaurant she managed. However, it is undisputed that Officer Hoffman's vehicle was parked in the vicinity of Crabby Jacks and that Hoffman returned to Crabby Jacks after apprehending Nacu where Williams positively identified Nacu and voluntarily agreed to be a witness against her. Based on these facts, Williams placed herself in a position to be identified and held accountable for the information she provided. *See Arizpe*, 308 S.W.3d at 92; *Fudge*, 42 S.W.3d at 232; *Pipkin*, 114 S.W.3d at 655.

Considering all four factors we used in *Arizpe*, we conclude that Williams' information was reliable. *See Arizpe*, 308 S.W.3d at 92; *see also Brother*, 166 S.W.3d at 258.

*2. Corroboration*

Having determined Williams' information was reliable, we must determine "whether the totality of that reliable information provided specific, articulable facts that, combined with reasonable inferences to be derived from those facts, would lead to the reasonable conclusion that the appellant was committing . . . some type of criminal activity." *See Derichsweiler v. State*, 348 S.W.3d 906, 915–16 (Tex. Crim. App. 2011); *see also Martinez*, 348 S.W.3d at 923. Before detaining a suspect, an officer must corroborate the facts supplied by a citizen-eyewitness. *Brother*, 166 S.W.3d at 258–59, 259 n.5. However, corroboration does not require the officer to personally observe criminal conduct; "[r]ather, corroboration refers to whether the police officer, in light of the circumstances, confirms enough facts to reasonably conclude that the information given to him is reliable and a temporary detention is thus justified." *Id.* at 259 n.5; *see also Dixon v. State*, 206 S.W.3d 613, 616 n.13, 617 n. 17, 618–19 (Tex. Crim. App. 2006).

Considering the totality of the circumstances, Officer Hoffman's seventeen years of police experience, and the reliability of Williams' information, we hold Officer Hoffman corroborated enough facts to justify a temporary detention of Nacu. *See Derichsweiler*, 348 S.W.3d at 916 (Tex. Crim. App. 2011); *Brother*, 166 S.W.3d at 258–59. Williams ran into a parking lot while holding a cordless indoor-phone. She obtained Officer Hoffman's attention by tapping on his police car's window. She explained that she was the manager of a restaurant, a customer became intoxicated at her restaurant, and now the customer was attempting to drive away. There was a restaurant in the vicinity of Hoffman's patrol car. Williams identified the intoxicated customer by pointing to the customer's vehicle and describing it as the one that was trying to get through two metal poles. The metal poles were too narrow to allow passage of

Nacu's vehicle, and Nacu almost ran into them. Hoffman testified that Williams appeared trustworthy. Because of the immediacy and danger that intoxicated drivers pose to the public, Hoffman pursued Nacu without obtaining further identifying information from Williams.

These are sufficient facts to establish reasonable suspicion. *See Martinez*, 348 S.W.3d at 923; *cf. Derichsweiler*, 348 S.W.3d at 917 (determining reasonable suspicion existed where officer was dispatched because a motorist was pulling up to parked vehicles and staring at them in a "bizarre" manner). Because Officer Hoffman corroborated Williams' reliable information, he was not required to follow Nacu until he personally observed a traffic violation. *Brother*, 166 S.W.3d at 259 ("To require officers who are apprised of detailed facts from citizen-eyewitnesses to observe suspects and wait until additional suspicious acts are committed, would be foolish and contrary to the balance of interests struck in *Terry* and its progeny.").

*3. Conclusory Statements*

Nacu contends that even if Williams' information was reliable and was corroborated, the information did not justify the stop because the statement "too intoxicated to drive" is purely conclusory. Nacu relies on the court of criminal appeals' holding in *Ford* to support her claim. *See Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005).

In *Ford*, the court determined that a trooper's statement that he believed the defendant was "following too closely," without more specific, articulable facts, was insufficient to establish reasonable suspicion. *Id.* Because the trial court was provided only with the conclusory statement that Ford violated the law, the court determined there was no way of assessing whether the conclusory opinion was "objectively reasonable." *Id.* In *Castro*, the court further explained when a conclusory statement will suffice for establishing reasonable suspicion. *Castro v. State*, 227 S.W.3d 737, 742 (Tex. Crim. App. 2007). When reasonable suspicion is based on an

objective observation or fact such as whether a defendant used his turn signal, a conclusory statement may suffice for determining reasonable suspicion. *See id.* In dicta, the court stated that "being intoxicated" can be an example of a subjective determination that must be accompanied by specific and articulable facts to establish reasonable suspicion. *See id.*

Absent any context, Williams' statement that Nacu was "too intoxicated to drive" is conclusory. However, Williams' explanation that the driver of a vehicle had previously been in her restaurant, was intoxicated, and trying to drive through metal poles too narrow to accommodate a car, gave Hoffman specific, articulable facts that would allow a reviewing court to determine whether Nacu's detention was objectively reasonable. *See Derichsweiler*, 348 S.W.3d at 917; *Castro*, 227 S.W.3d at 742; *Ford*, 158 S.W.3d at 493.

Moreover, Nacu's narrow interpretation of *Ford* does not comport with the court of criminal appeals' holding in *Derichsweiler*. In *Derichsweiler*, an informant testified at the suppression hearing and stated that the defendant pulled up beside her and her husband at a restaurant drive-through and "[j]ust kind of grinn[ed]" at them. *Derichsweiler*, 348 S.W.3d at 909–10 (first alteration in original), *cert. denied,* 132 S. Ct. 150 (2011). The defendant lingered beside them for less than a minute and drove around the lot. *Id.* The driver repeated this behavior two more times, drove off, and pulled up to at least two other vehicles in a nearby lot. *Id.* The couple dialed 911 and reported this behavior. *Id.* The court determined that the reliable informants' tip to the 911-dispatcher describing the defendant's "bizarre" and "scrutinizing" behavior was sufficient for establishing reasonable suspicion. *Id.* at 917.

What sets *Derichsweiler*'s facts and the facts underlying Nacu's detention apart from those in *Ford* are the specific and articulable facts provided by the detaining officers to support the witnesses' conclusory statements. In *Ford*, the only testimony offered to support a finding of

reasonable suspicion was that the suspect was following too closely. *Ford*, 158 S.W.3d at 493. In *Derichsweiler*, the specific and articulable facts testified to were that a suspicious driver was grinning and staring at parked motorists, the driver repeated this behavior, and that it was directed toward at least three different parked vehicles. *See Derichsweiler*, 348 S.W.3d at 909–10. Here, it is arguable that the testimony offered by Hoffman provided the trial court with more specific and articulate facts that Nacu was engaged in criminal activity than did the detaining officer in *Derichsweiler*. *Compare id.* at 917. Additionally, the difference in experience levels between Officer Hoffman (seventeen years) and the detaining officer in *Derichsweiler* (less than a year) further supports a determination that the detention of Nacu was objectively more reasonable than that of *Derichsweiler*. *Id.* at 910; *see also Davis v. State*, 829 S.W.2d 218, 220 (Tex. Crim. App. 1992) ("In justifying a stop, the police officer can make rational inferences from the articulable facts based upon the officer's personal knowledge and experience.").

We also note that the underlying facts and legal principles surrounding Nacu's detention are distinguishable from those in *Torres*. *See Torres v. State*, 182 S.W.3d 899, 900–03 (Tex. Crim. App. 2005). After Torres crashed his vehicle into a homeowner's porch, two sheriff's deputies were the first on the scene to investigate the accident. *Id.* The deputies called a state trooper to investigate the accident. *Id.* The deputies explained to the trooper "only that they believed that appellant was intoxicated," and left the scene. *Id.* The trooper questioned Torres but did not ask him if he had been drinking. *Id.* After seeing Torres favor one arm, the trooper arrested him without performing field sobriety tests. *Id.* The court held that the deputies' unexplained opinions that Torres was intoxicated were not sufficient for establishing probable cause. *Id.* at 903. Notably, the court in *Torres* was concerned with probable cause, *see id.* at 901, a standard that is more exacting than the standard for determining reasonable suspicion, *see*

*Derichsweiler*, 348 S.W.3d at 916; *accord Alabama v. White*, 496 U.S. 325, 330 (1990). Additionally, the arresting officer did not give any specific and articulable facts that supported a determination that Torres was intoxicated. *See Torres*, 182 S.W.3d at 903. As discussed above, Officer Hoffman supplied the court with numerous specific and articulable facts that supported the trial court's determination that Hoffman had reasonable suspicion to detain Nacu.

Because Williams' reliable, conclusory statement was supplemented with objective, specific, and articulable facts that were corroborated by Officer Hoffman, the trial court did not err in denying Nacu's motion to suppress.

## CONCLUSION

For the reasons stated above, the trial court did not err in denying Nacu's motion to suppress evidence. Accordingly, we affirm the trial court's judgment.

Rebecca Simmons, Justice

PUBLISH