

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00433-CR

JEFFREY W. MORRIS                                    APPELLANT

V.

THE STATE OF TEXAS                                        STATE

----------

## FROM COUNTY CRIMINAL COURT NO. 2 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

In a single issue, Appellant Jeffrey W. Morris appeals his conviction for misdemeanor driving while intoxicated (DWI). We affirm.

### II. Factual and Procedural History

Morris was charged with misdemeanor DWI. Prior to trial, he filed a motion to suppress all physical evidence obtained by the Arlington Police Department as

---

[1]*See* Tex. R. App. P. 47.4.

the fruit of an illegal search and seizure in violation of his federal and state constitutional rights and code of criminal procedure article 38.23. After a hearing,[2] the trial court denied Morris's motion.

Timothy Beavers testified that he called 911 in the early morning of June 13, 2009, to report a truck traveling in a dangerous and erratic manner at a high rate of speed on Interstate 30. He provided an Arlington Police Dispatcher with his contact information, a description of his vehicle, a description of the truck, the truck's license plate number, and the truck's approximate location on I-30. Beavers followed the truck and relayed its actions to the dispatcher—speeding, almost rear-ending another vehicle, almost hitting a retaining wall, and fish-tailing through a turn. After the truck stopped at a residence, Beavers parked on a street near the front of the house and provided the dispatcher with the address and a description of the driver who had pulled into the driveway, exited the truck, and remained outside of the house. Beavers stated that he waited until the police arrived and that "as the officer was driving up into the driveway, [a person later identified as Morris] *walked out to meet the officer*. He walked out from behind the vehicle and they met." [Emphasis added.] At the end of Beavers's testimony, a recording of the 911 call was admitted into evidence and played for the jury.

---

[2]The record does not contain a transcript of the pretrial hearing.

2

Responding Arlington Police Officer Neil Landfield, dispatched to the residence on a "DWI complainant following" call, testified that he did not speak to Beavers but saw Beavers point in the direction of the residence. Officer Landfield observed a truck matching the suspect vehicle's description in the driveway and a man standing outside of the house and, with his overhead lights flashing, pulled his police vehicle into the driveway, blocking the truck from exiting. He also said that after he exited his patrol car he either approached Morris or requested that Morris approach him and asked Morris, who appeared confused, had slurred speech, and smelled of alcohol, if he had been driving. Morris, who had keys in his hand, admitted that he had been driving, that he had been at a bar in Fort Worth, and that he probably should not have driven home.

Morris objected to Officer Landfield's testimony, argued that Officer Landfield's actions violated his federal and state constitutional rights against unreasonable searches and seizures, and reurged his motion to suppress all physical evidence obtained by the Arlington police department. The trial court granted Morris a running objection and carried Morris's motion along at trial.

Officer Landfield stated that because Morris became irate during their conversation, he told Morris to sit cross-legged on the curb. Officer Landfield repeated this during cross-examination:

> [Morris's Attorney:]    And you did have a conversation with Mr. Morris?
>
> [Officer Landfield:]    Yes.

3

> [Morris's Attorney:]      And some -- at some point during that conversation you asked him to sit down Indian style with hands on his knees in his driveway?
>
> [Officer Landfield:]      Absolutely.

Arlington Police Officer Hyder testified that he arrived nineteen minutes after Officer Landfield; that Morris was being detained at the time he arrived; and that because Morris smelled of alcohol, had slurred speech, and glassy and watery or blood-shot eyes, he conducted field sobriety tests, determined that Morris was intoxicated, and arrested him.

At the end of the first day of trial, the trial court held a hearing on Morris's reurged motion to suppress. Morris testified that Officer Landfield ordered him to sit down with his legs crossed before he asked any questions, that he was confused because he did not know what was going on with the vehicle at the end of his driveway, and that he did not feel free to leave at that point. On cross-examination, Morris said "[t]hat's absolutely what happened, yes[]" when asked "[a]nd did [the police] encounter you and merely start asking you questions?" Morris also stated that the police did not tell him that he was detained until after he had answered their initial questions. The trial court again carried Morris's motion along at trial.

After both parties rested, the trial court heard additional arguments on Morris's motion and concluded that Morris consented to speak with Officer Landfield, determined that the encounter was voluntary, and denied Morris's

4

motion to suppress.[3]  Morris then argued that a factual issue existed as to the legality of the evidence obtained and requested a jury instruction pursuant to code of criminal procedure article 38.23.  The trial court denied Morris's request.  A jury found Morris guilty, and the trial court assessed punishment of 120 days' confinement and a $2,000 fine.  This appeal followed.

## III.  Article 38.23 Instruction

In his sole issue, Morris complains that "[b]ecause there was a material disputed fact concerning how the evidence to establish 'reasonable suspicion' . . . was obtained, the trial court erred by denying Morris's request for a 38.23 jury instruction."  Morris cites three reasons to support his complaint:  (1) there is a material disputed fact because the jury heard contradicting testimony by Officer Landfield concerning his initial encounter with Morris, (2) Officer Landfield's testimony affirmatively contested evidence of their encounter, and (3) whether the evidence suggested that Officer Landfield intimidated Morris into answering his questions or if Morris consented to speak with Officer Landfield is a material factual dispute because Officer Landfield's reasonable suspicion arose during the parties' conversation.

### A.  Standard of Review

Appellate review of error in a jury charge involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994); *see also Sakil*

---

[3]The trial court documented these findings in its written findings of fact and conclusions of law.

*v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). Initially, we must determine whether error occurred. If so, we must then evaluate whether sufficient harm resulted from the error to require reversal. *Abdnor*, 871 S.W.2d at 731–32.

## B. Applicable Law

Article 38.23(a) states:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex. Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2009).

Article 38.23 requires a jury instruction only if there is a genuine dispute about a fact that is material to the admissibility of the challenged evidence. *See Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008); *Madden v. State*, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007); *Pierce v. State*, 32 S.W.3d 247, 251 (Tex. Crim. App. 2000). A defendant must establish three foundation requirements to trigger an article 38.23 instruction: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) the contested factual issue must be material to the lawfulness of the challenged conduct in obtaining the evidence claimed to

6

have been seized illegally. *See Oursbourn*, 259 S.W.3d at 177; *Madden*, 242 S.W.3d at 510. The defendant must offer evidence that, if credited, would create a reasonable doubt as to a specific factual matter essential to the admissibility of the challenged evidence. *See Oursbourn*, 259 S.W.3d at 177; *Madden*, 242 S.W.3d at 510; 40 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice and Procedure* § 4.194 (2d ed. 2001). "And *if other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury* because it is not material to the ultimate admissibility of the evidence." *Madden*, 242 S.W.3d at 510 (emphasis added).

## C. Analysis

The jury heard Beavers's uncontroverted testimony that Morris approached Officer Landfield's patrol unit as it pulled into Morris's driveway. Beavers's testimony supports the trial court's ruling that the parties' encounter was consensual. Thus, we conclude that because an undisputed fact supports the lawfulness of the encounter, no disputed fact issue material to the legal question of "reasonable suspicion" to detain Morris existed, and the trial court properly denied Morris's requested jury instruction. *See Madden*, 242 S.W.3d at 513; *see also State v. Woodard*, No. PD-0828-10, 2011 WL 1261320, at *4 (Tex. Crim. App. Apr. 6, 2011) (noting that the defendant has initial burden to show that he was seized without a warrant and that a "stop" to make an inquiry, on its own, does not show a seizure and holding consensual an encounter between an

officer investigating a single-car accident who stopped and questioned a person walking on a sidewalk approximately one quarter of a mile from the accident scene who was wearing clothing matching the "vague description of the driver's clothing" provided by an anonymous tipster); *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008) (recognizing that police officers are free to approach a residence to ask to speak with an individual and that such conduct does not constitute a seizure until the officer engages in coercive, offensive, or threatening conduct); *cf. State v. Garcia*, 859 S.W.2d 125, 127 (Tex. App.—Fort Worth 1993, pet. ref'd) (noting that a person standing in the front yard of a residence does not have a reasonable expectation of privacy).

However, even assuming arguendo that the parties' encounter was not consensual, Officer Landfield had reasonable suspicion to undertake an investigative detention. Under the Fourth Amendment, a temporary detention is justified when the detaining officer has specific articulable facts which, taken together with rational inferences from those facts, lead the officer to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968).

The factual basis supporting reasonable suspicion need not arise from the officer's personal observation, but may be supplied by information acquired from another person. *See Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924 (1972). It has been widely recognized that the reliability of a citizen-informant is generally shown by the nature of the circumstances under which the

8

incriminating information became known to him or her. *Brother v. State*, 166 S.W.3d 255, 258 (Tex. Crim. App. 2005), *cert. denied*, 546 U.S. 1150 (2006).

The trial court issued the following relevant written findings of fact and conclusions of law: that at approximately 2:50 a.m. on June 13, 2009, Beavers called 911, identified himself, reported an erratic and unsafe driver on I-30, described the suspect vehicle as a white pickup, and provided the vehicle's license plate number; that Beavers followed the driver to a residence, relayed the residence's address to the 911 dispatcher, informed the 911 dispatcher that a white male had exited the suspect vehicle and had remained outside the residence; that Beavers waited at the residence for the police to arrive; that Beavers was still on the phone with the 911 dispatcher when Officer Landfield arrived on scene; that Officer Landfield observed Beavers pointing in the direction of the white male; that Officer Landfield observed a white male standing in the yard of the residence and a white truck matching the suspect vehicle's description in the residence's driveway; that Arlington police dispatchers provide information derived from incoming calls via a computerized system referred to as "call texts" or "call sheets"; that the white male in the yard matched the description that Officer Landfield received in his call text; that the call text Officer Landfield received contained Beavers's name, cell phone number, vehicle

description, and location; that Officer Landfield made contact with the white male in the yard; and that the white male in the yard was later identified as Morris.[4]

At trial, Officer Landfield testified that as he approached Morris, he observed that Morris appeared confused, had slurred speech, smelled of alcohol, and had keys in his hand. Even prior to Officer Landfield asking Morris a single question, viewing the totality of the circumstances, Officer Landfield's observations combined with the information provided by Beavers via the 911 dispatch call text provided Officer Landfield with reasonable suspicion to detain Morris long enough to determine if a crime was afoot. *See Brother*, 166 S.W.3d at 259–60 (finding reasonable suspicion for investigative detention based on information supplied by citizen-informant); *Pipkin v. State*, 114 S.W.3d 649, 654–55 (Tex. App.—Fort Worth 2003, no pet.) (holding that report of erratic driving relayed to a dispatcher, combined with suspect vehicle's description and location and citizen-informant's identifying information, provided adequate corroboration for the officer to have reasonably concluded that the information was reliable and justified a temporary detention); *State v. Stolte*, 991 S.W.2d 336, 342–43 (Tex. App.—Fort Worth 1999, no pet.) (holding that information from citizen-informant who was unidentified prior to the detention, but who provided specific details about suspect vehicle and an ongoing account of suspect vehicle's actions to a

---

[4]Because these findings are supported by the record, we defer to them in our review. *See State v. Iduarte*, 268 S.W.3d 544, 548–49 (Tex. Crim. App. 2008).

police dispatcher, rendered the information sufficiently reliable to justify an investigative stop).

We overrule Morris's sole issue.

### IV. Conclusion

Having overruled Morris's sole issue, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: May 5, 2011