02-09-433-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00433-CR

 

 


 
 
 Jeffrey W. Morris
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM County
Criminal Court No. 2 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

          In
a single issue, Appellant Jeffrey W. Morris appeals his conviction for
misdemeanor driving while intoxicated (DWI).  We affirm.

II. 
Factual and Procedural History

Morris was charged with misdemeanor DWI.  Prior to trial,
he filed a motion to suppress all physical evidence obtained by the Arlington
Police Department as the fruit of an illegal search and seizure in violation of
his federal and state constitutional rights and code of criminal procedure
article 38.23.  After a hearing,[2] the trial court denied
Morris’s motion.

Timothy Beavers testified that he called 911 in the early
morning of June 13, 2009, to report a truck traveling in a dangerous and
erratic manner at a high rate of speed on Interstate 30.  He provided an Arlington
Police Dispatcher with his contact information, a description of his vehicle, a
description of the truck, the truck’s license plate number, and the truck’s
approximate location on I-30.  Beavers followed the truck and relayed its
actions to the dispatcher—speeding, almost rear-ending another vehicle, almost
hitting a retaining wall, and fish-tailing through a turn.  After the truck
stopped at a residence, Beavers parked on a street near the front of the house
and provided the dispatcher with the address and a description of the driver
who had pulled into the driveway, exited the truck, and remained outside of the
house.  Beavers stated that he waited until the police arrived and that “as the
officer was driving up into the driveway, [a person later identified as Morris]
walked out to meet the officer.  He walked out from behind the vehicle
and they met.”  [Emphasis added.]  At the end of Beavers’s testimony, a
recording of the 911 call was admitted into evidence and played for the jury.

Responding Arlington Police Officer Neil Landfield, dispatched
to the residence on a “DWI complainant following” call, testified that he did
not speak to Beavers but saw Beavers point in the direction of the residence.  Officer
Landfield observed a truck matching the suspect vehicle’s description in the
driveway and a man standing outside of the house and, with his overhead lights
flashing, pulled his police vehicle into the driveway, blocking the truck from
exiting.  He also said that after he exited his patrol car he either approached
Morris or requested that Morris approach him and asked Morris, who appeared
confused, had slurred speech, and smelled of alcohol, if he had been driving.  Morris,
who had keys in his hand, admitted that he had been driving, that he had been
at a bar in Fort Worth, and that he probably should not have driven home.

Morris objected to Officer Landfield’s testimony, argued that
Officer Landfield’s actions violated his federal and state constitutional
rights against unreasonable searches and seizures, and reurged his motion to
suppress all physical evidence obtained by the Arlington police department.  The
trial court granted Morris a running objection and carried Morris’s motion
along at trial.

Officer
Landfield stated that because Morris became irate during their conversation, he
told Morris to sit cross-legged on the curb.  Officer Landfield repeated this
during cross-examination:

[Morris’s
Attorney:]          And you did have a conversation with Mr. Morris?

 

          [Officer Landfield:]           Yes.

 

[Morris’s
Attorney:]          And some -- at some point during that conversation you
asked him to sit down Indian style with hands on his knees in his driveway?

 

          [Officer Landfield:]           Absolutely.

 

Arlington Police Officer Hyder testified that he arrived
nineteen minutes after Officer Landfield; that Morris was being detained at the
time he arrived; and that because Morris smelled of alcohol, had slurred speech,
and glassy and watery or blood-shot eyes, he conducted field sobriety tests,
determined that Morris was intoxicated, and arrested him.

At the end of the first day of trial, the trial court
held a hearing on Morris’s reurged motion to suppress.  Morris testified that Officer
Landfield ordered him to sit down with his legs crossed before he asked any
questions, that he was confused because he did not know what was going on with
the vehicle at the end of his driveway, and that he did not feel free to leave
at that point.  On cross-examination, Morris said “[t]hat’s absolutely what
happened, yes[]” when asked “[a]nd did [the police] encounter you and merely
start asking you questions?”  Morris also stated that the police did not tell
him that he was detained until after he had answered their initial questions.  The
trial court again carried Morris’s motion along at trial.

After
both parties rested, the trial court heard additional arguments on Morris’s
motion and concluded that Morris consented to speak with Officer Landfield,
determined that the encounter was voluntary, and denied Morris’s motion to
suppress.[3]  Morris then argued that
a factual issue existed as to the legality of the evidence obtained and
requested a jury instruction pursuant to code of criminal procedure article
38.23.  The trial court denied Morris’s request.  A jury found Morris guilty,
and the trial court assessed punishment of 120 days’ confinement and a $2,000
fine.  This appeal followed.

III. 
Article 38.23 Instruction

          In
his sole issue, Morris complains that “[b]ecause there was a material disputed
fact concerning how the evidence to establish ‘reasonable suspicion’ . . . was
obtained, the trial court erred by denying Morris’s request for a 38.23 jury
instruction.”  Morris cites three reasons to support his complaint:  (1) there
is a material disputed fact because the jury heard contradicting testimony by Officer
Landfield concerning his initial encounter with Morris, (2) Officer Landfield’s
testimony affirmatively contested evidence of their encounter, and (3) whether
the evidence suggested that Officer Landfield intimidated Morris into answering
his questions or if Morris consented to speak with Officer Landfield is a
material factual dispute because Officer Landfield’s reasonable suspicion arose
during the parties’ conversation.

A. 
Standard of Review

          Appellate
review of error in a jury charge involves a two-step process.  Abdnor v.
State, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994); see also Sakil v.
State, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009).  Initially, we must
determine whether error occurred.  If so, we must then evaluate whether
sufficient harm resulted from the error to require reversal.  Abdnor,
871 S.W.2d at 731–32.

B. 
Applicable Law

          Article
38.23(a) states:

(a)  No evidence
obtained by an officer or other person in violation of any provisions of the
Constitution or laws of the State of Texas, or of the Constitution or laws of
the United States of America, shall be admitted in evidence against the accused
on the trial of any criminal case.

          

In any case where the
legal evidence raises an issue hereunder, the jury shall be instructed that if
it believes, or has a reasonable doubt, that the evidence was obtained in
violation of the provisions of this Article, then and in such event, the jury
shall disregard any such evidence so obtained.

 

Tex.
Code Crim. Proc. Ann. art. 38.23(a) (Vernon 2009).

Article
38.23 requires a jury instruction only if there is a genuine dispute about a
fact that is material to the admissibility of the challenged evidence.  See
Oursbourn v. State, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008); Madden
v. State, 242 S.W.3d 504, 509–10 (Tex. Crim. App. 2007); Pierce v. State,
32 S.W.3d 247, 251 (Tex. Crim. App. 2000).  A defendant must establish three
foundation requirements to trigger an article 38.23 instruction: (1) the
evidence heard by the jury must raise an issue of fact; (2) the evidence on
that fact must be affirmatively contested; and (3) the contested factual issue
must be material to the lawfulness of the challenged conduct in obtaining the
evidence claimed to have been seized illegally.  See Oursbourn, 259
S.W.3d at 177; Madden, 242 S.W.3d at 510.  The defendant must offer
evidence that, if credited, would create a reasonable doubt as to a specific
factual matter essential to the admissibility of the challenged evidence.  See
Oursbourn, 259 S.W.3d at 177; Madden, 242 S.W.3d at 510; 40 George
E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and
Procedure § 4.194 (2d ed. 2001).  “And if other facts, not in dispute,
are sufficient to support the lawfulness of the challenged conduct, then the
disputed fact issue is not submitted to the jury because it is not material
to the ultimate admissibility of the evidence.”  Madden, 242 S.W.3d at
510 (emphasis added).

C. 
Analysis

The
jury heard Beavers’s uncontroverted testimony that Morris approached Officer Landfield’s
patrol unit as it pulled into Morris’s driveway.  Beavers’s testimony supports
the trial court’s ruling that the parties’ encounter was consensual.  Thus, we
conclude that because an undisputed fact supports the lawfulness of the encounter,
no disputed fact issue material to the legal question of “reasonable suspicion”
to detain Morris existed, and the trial court properly denied Morris’s requested
jury instruction.  See Madden, 242 S.W.3d at 513; see also State v. Woodard,
No. PD-0828-10, 2011 WL 1261320, at *4 (Tex. Crim. App. Apr. 6, 2011) (noting
that the defendant has initial burden to show that he was seized without a
warrant and that a “stop” to make an inquiry, on its own, does not show a
seizure and holding consensual an encounter between an officer investigating a
single-car accident who stopped and questioned a person walking on a sidewalk
approximately one quarter of a mile from the accident scene who was wearing
clothing matching the “vague description of the driver’s clothing” provided by
an anonymous tipster); State v. Garcia-Cantu, 253 S.W.3d 236, 243 (Tex.
Crim. App. 2008) (recognizing that police officers are free to approach a
residence to ask to speak with an individual and that such conduct does not
constitute a seizure until the officer engages in coercive, offensive, or
threatening conduct); cf. State v. Garcia, 859 S.W.2d 125, 127
(Tex. App.—Fort Worth 1993, pet. ref’d) (noting that a person standing in the
front yard of a residence does not have a reasonable expectation of privacy).

However,
even assuming arguendo that the parties’ encounter was not consensual, Officer
Landfield had reasonable suspicion to undertake an investigative detention. 
Under the Fourth Amendment, a temporary detention is justified when the
detaining officer has specific articulable facts which, taken together with
rational inferences from those facts, lead the officer to conclude that the
person detained is, has been, or soon will be engaged in criminal activity.  Terry
v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968).

The
factual basis supporting reasonable suspicion need not arise from the officer’s
personal observation, but may be supplied by information acquired from another
person.  See Adams v. Williams, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924
(1972).  It has been widely recognized that the reliability of a
citizen-informant is generally shown by the nature of the circumstances under
which the incriminating information became known to him or her.  Brother v.
State, 166 S.W.3d 255, 258 (Tex. Crim. App.  2005), cert. denied,
546 U.S. 1150 (2006).

The
trial court issued the following relevant written findings of fact and
conclusions of law: that at approximately 2:50 a.m. on June 13, 2009, Beavers
called 911, identified himself, reported an erratic and unsafe driver on I-30,
described the suspect vehicle as a white pickup, and provided the vehicle’s
license plate number; that Beavers followed the driver to a residence, relayed
the residence’s address to the 911 dispatcher, informed the 911 dispatcher that
a white male had exited the suspect vehicle and had remained outside the
residence; that Beavers waited at the residence for the police to arrive; that Beavers
was still on the phone with the 911 dispatcher when Officer Landfield arrived
on scene; that Officer Landfield observed Beavers pointing in the direction of
the white male; that Officer Landfield observed a white male standing in the
yard of the residence and a white truck matching the suspect vehicle’s
description in the residence’s driveway; that Arlington police dispatchers
provide information derived from incoming calls via a computerized system
referred to as “call texts” or “call sheets”; that the white male in the yard
matched the description that Officer Landfield received in his call text; that the
call text Officer Landfield received contained Beavers’s name, cell phone
number, vehicle description, and location; that Officer Landfield made contact
with the white male in the yard; and that the white male in the yard was later
identified as Morris.[4]

At
trial, Officer Landfield testified that as he approached Morris, he observed
that Morris appeared confused, had slurred speech, smelled of alcohol, and had
keys in his hand.  Even prior to Officer Landfield asking Morris a single
question, viewing the totality of the circumstances, Officer Landfield’s
observations combined with the information provided by Beavers via the 911
dispatch call text provided Officer Landfield with reasonable suspicion to
detain Morris long enough to determine if a crime was afoot.  See Brother,
166 S.W.3d at 259–60 (finding reasonable suspicion for investigative detention
based on information supplied by citizen-informant); Pipkin v. State,
114 S.W.3d 649, 654–55 (Tex. App.—Fort Worth 2003, no pet.) (holding that report
of erratic driving relayed to a dispatcher, combined with suspect vehicle’s
description and location and citizen-informant’s identifying information,
provided adequate corroboration for the officer to have reasonably concluded
that the information was reliable and justified a temporary detention); State
v. Stolte, 991 S.W.2d 336, 342–43 (Tex. App.—Fort Worth 1999, no pet.)
(holding that information from citizen-informant who was unidentified prior to the
detention, but who provided specific details about suspect vehicle and an
ongoing account of suspect vehicle’s actions to a police dispatcher, rendered
the information sufficiently reliable to justify an investigative stop).

We
overrule Morris’s sole issue.

IV. Conclusion

          Having
overruled Morris’s sole issue, we affirm the trial court’s judgment.

 

 

BOB MCCOY
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; MCCOY and GABRIEL, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  May 5, 2011









[1]See Tex. R. App. P. 47.4.





[2]The record does not
contain a transcript of the pretrial hearing.





[3]The trial court documented
these findings in its written findings of fact and conclusions of law.





[4]Because these findings are
supported by the record, we defer to them in our review.  See State v.
Iduarte, 268 S.W.3d 544, 548–49 (Tex. Crim. App. 2008).