

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00541-CR

ADAM JASON VAN CLEAVE                                         APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM COUNTY CRIMINAL COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Adam Jason Van Cleave appeals from the trial court's order denying his pretrial motion to suppress. We affirm.

### Background Facts

On September 22, 2011, at 5:43 p.m., Officer Charles Simmons was dispatched to the parking lot of an Office Depot warehouse. It was not a retail

---

[1]Tex. R. App. P. 47.4.

Office Depot location. The dispatcher informed Simmons that a white male wearing a white T-shirt and sitting in a green jeep with Michigan license plates had been in the parking lot for over an hour and would not respond when employees at the warehouse tried to rouse him. He was told the driver was suspected to be either "very ill" or intoxicated. Simmons was also told that the dispatch was based on a 911 call made by Michael Crossley. Crossley was an employee at the warehouse.

Simmons arrived at the parking lot at 5:45 p.m. He immediately saw a green jeep in the parking lot with the driver's-side door open. A white male wearing a white T-shirt sat in the driver's seat. The driver, who was later identified as Appellant, saw Simmons, closed the door, turned the jeep ignition on, and put the car in reverse. Simmons concluded that Appellant was not ill but had either been sleeping or was intoxicated. Appellant began reversing out of the parking spot, but "it wasn't very smooth, it was jerky." Appellant's poor driving bolstered Simmons's conclusion that the driver was possibly intoxicated as suggested by the dispatch call.

Appellant tried to back up about ten to fifteen feet before Simmons turned on the overhead lights on his police car to stop Appellant. Simmons then got out of his car and began shouting at Appellant to stop. Appellant put his car into first gear and began to drive jerkily back into the parking spot. Simmons told Appellant to "just . . . stop, turn it off." Appellant kept moving forward, so

2

Simmons "opened the door and then turned the vehicle off." Prior to turning off the car, Simmons noticed a beer can in the console and the smell of alcohol.

Appellant was indicted for driving while intoxicated with an open container of alcohol in his immediate possession. *See* Tex. Penal Code Ann. § 49.04(a), (c) (West Supp. 2012). Appellant filed a motion to suppress based on Simmons's lack of reasonable suspicion to detain Appellant. The trial court held a hearing on Appellant's motion and, after hearing Simmons's testimony, entered detailed findings of fact and conclusions of law and denied the motion. Appellant then pleaded guilty without a plea-bargain agreement, and the trial court sentenced Appellant to twenty days' confinement and an $800 fine. Appellant filed a notice of appeal and now argues in two issues that because the 911 caller actually was anonymous and because there was no reasonable suspicion to detain Appellant, the trial court erred by denying his motion to suppress.

### Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v.*

3

*State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). In unlawful-detention cases, whether the facts known to the officer at the time of the detention constituted a reasonable suspicion is reviewed do novo. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S. Ct. 1657, 1663 (1996).

## Discussion

### I. The tipster

Appellant argues in his first issue that the tipster who called 911 was anonymous and therefore unreliable.[2] The trial court issued a conclusion of law stating,

> In this case[,] Officer Simmons had the identity of the informant including name and phone number on the call screen in the patrol car. The informant clearly placed himself in a position in which he could be easily identified, located, and held accountable. Under such facts the information provided by the known informant is considered reliable.

The person who called 911 identified himself as Michael Crossley and said, "[W]e've knocked on the car a couple of times" but Appellant "can't even look at the window when we're knocking on the door." When the dispatcher asked for the car's license plate, another, unidentified voice in the background

---

[2]The State argues that Appellant did not present the specific argument he makes on appeal to the trial court. During the hearing on Appellant's motion to suppress, he argued that the caller was anonymous and unreliable, which is the gist of his argument on appeal. But even assuming that Appellant preserved his complaint, as further explained below, we decline to hold that the caller was anonymous and unreliable.

4

relayed the information to Crossley. The dispatcher asked for a description of the man in the car. Crossley paused and the unidentified voice said that he was "white" and wearing a white T-shirt. Appellant argues that because Crossley did not know what race Appellant was or what Appellant was wearing, "it is immediately apparent [that] his knowledge is secondhand."

Appellant relies on *Rojas v. State*, 797 S.W.2d 41, 44 (Tex. Crim. App. 1990), which held that probable cause was lacking when an anonymous tipster provided information that was "was plainly secondhand when received by the informer" and included "no additional facts . . . which indicated any special or personal knowledge on the part of the informer." *Rojas* concerned the possession of contraband and held "when an anonymous tip is relied upon to furnish probable cause, the informer must assert personal knowledge or there must be additional facts showing reason to believe that the contraband sought will probably be where the information indicates it will be." *Id.*

Appellant also cites *Derichsweiler v. State*, 348 S.W.3d 906 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 150 (2011), and attempts to distinguish it from the present facts. In *Derichsweiler*, the tipsters "identified themselves to the 911 dispatcher and remained answerable for their report after the fact. That report was based upon their own first-hand perceptions, many of which they continuously and contemporaneously narrated to the police via the 911 dispatcher." *Id.* at 915. The court of criminal appeals stated that in that case

5

there was "no issue . . . with respect to the reliability of the information supplied by the citizen-informants." *Id.*

From the recording of the 911 call,[3] it is clear that Office Depot warehouse employees collectively witnessed Appellant in his car and decided to call the police. When the dispatcher asked what race Appellant was, the unidentified voice responded "white" without Crossley having to relay the question to him, indicating that the unidentified voice could hear the dispatcher. We therefore consider the caller and the unidentified voice together as the tipsters in this case. *See Gansky v. State*, 180 S.W.3d 240, 247 (Tex. App.—Fort Worth 2005, pet. ref'd) (holding that when officer received numerous anonymous tips, "both the quantity of callers and their contemporaneous sightings increased the reliability and accuracy," especially when at least one tipster "made him[self] identifiable").

Crossley identified himself by name and stated, "I work at Office Depot here." He provided his phone number as well as that of a co-worker, thereby putting himself in a position to be held accountable. *See Pipkin v. State*, 114 S.W.3d 649, 655 (Tex. App.—Fort Worth 2003, no pet.) (noting that a caller can prove his reliability by putting himself in a position to be held accountable). Crossley also provided detailed description of Appellant's behavior and where he could be found. *See id.* The relayed information was not "secondhand" in the same sense as in *Rojas*, when it was unclear when the caller had received the

_____

[3]This court requested the 911 call recording from the trial court and listened to it in its entirety.

6

information or from whom. *See* 797 S.W.2d at 44. In this case, the unidentified voice provided firsthand information to the dispatcher. And unlike in *Rojas*, Crossley stated that he and others were personally involved in knocking on the car door and observing Appellant. *See Pipkin*, 114 S.W.3d at 655. As in *Derichsweiler*, the tipsters provided their first-hand account to the dispatcher. *See* 348 S.W.3d at 915. The trial court did not err by considering Crossley and the other, unknown voice as a "known informant" and by considering the information they provided reliable. We overrule Appellant's first issue.

## II. Reasonable suspicion

In his second issue, Appellant argues that the police officer did not have reasonable suspicion to detain him. Under the Fourth Amendment, a warrantless detention of the person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion. *See Derichsweiler*, 348 S.W.3d at 914. A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880 (1968). This standard looks to the totality of the circumstances; if the circumstances combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Derichsweiler*, 348 S.W.3d at 914. We consider the cumulative information known to the cooperating officers, including a 911 dispatcher. *Id.* at 914–15.

7

When a known citizen-informant provides information, the only question is whether that information, viewed through the prism of the detaining officer's particular level of knowledge and experience, objectively supports a reasonable suspicion to believe that criminal activity is afoot. *Id.* at 915.

Based on the information provided by the tipsters, the dispatching officer gave the arresting officer the color, model, license plates, and location of the car where Appellant was found. The dispatching officer also described Appellant as a "white male." The arresting officer corroborated all the information provided by the employees, including the license plate of the car and the description of Appellant. *See State v. Stolte*, 991 S.W.2d 336, 343 (Tex. App.—Fort Worth 1999, no pet.) (holding that officer was justified in initiating an investigatory stop when he confirmed that a pickup matching the description and license plate given was located where the informant indicated).

The arresting officer then personally witnessed Appellant see him and try to leave the parking lot.[4] The officer noted that Appellant was having difficulty backing the car out of the parking spot, which indicated to him that Appellant was likely impaired. *See Arizpe v. State*, 308 S.W.3d 89, 94 (Tex. App.—San Antonio 2010, no pet.) (stating that anonymous tip that appellant was driving drunk was sufficiently corroborated to support officer's reasonable suspicion when the

_____

[4]The officer parked his patrol car "probably 15, 20 feet" from Appellant's car with his overhead lights off. Contrary to statements in Appellant's brief, the officer did not testify that Appellant's car was blocked.

officer witnessed the identified vehicle "positioned in between two lanes at a traffic light"). Simmons testified that it was "not normal" for a person to be sleeping in a car in a warehouse parking lot during the day and that "most people, if they're ill, wouldn't be leaving the scene if an officer or medical personnel would show up on the scene. So, I mean, to me it would either be one of two things: He was either there sleeping because he was tired, or two, was intoxicated."

The police officer pointed to specific and articulable facts (that the warehouse employees had difficulty rousing Appellant, that Appellant had difficulty driving the car, and that he attempted to leave once he saw the officer) and rational inferences from those facts (that Appellant was likely intoxicated and not sleepy or ill) that led him to reasonably conclude that Appellant was, had been, or soon would be engaged in criminal activity, namely, driving while intoxicated. In light of the totality of the circumstances, the information from the caller in conjunction with the police officer's corroboration was sufficient to support an investigative detention based on reasonable suspicion. The trial court did not err by denying Appellant's motion to suppress, and we overrule his second issue.

## Conclusion

Having overruled Appellant's issues on appeal, we affirm the trial court's order.

LEE GABRIEL
JUSTICE

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 24, 2013